United States Court of Appeals,

Fifth Circuit.

No. 95-60288.

MISSISSIPPI DEPARTMENT OF ECONOMIC AND COMMUNITY DEVELOPMENT,
Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR, Respondent.

Aug. 1, 1996.

Petition for Review of an Order of the United States Department of Labor.

Before REAVLEY, KING and EMILIO M. GARZA, Circuit Judges.

REAVLEY, Circuit Judge:

The Mississippi Department of Economic and Community Development (MDECD) appeals a final order[1] of the Secretary of Labor, ordering the reimbursement to the federal government of certain funds provided under the Job Training Partnership Act (JTPA or Act).[2] We affirm.

BACKGROUND

The Act provides federal funding to state governments for job training and placement programs for economically disadvantaged persons. MDECD is the designated agent of the Governor of Mississippi for receipt of federal funding under the Act. The Mississippi Service Delivery Area (MSDA) is a division or office of the MDECD and received funding for programs under the Act serving most of the counties of Mississippi. In 1984 MSDA and the Mississippi Employment Service Commission (MESC), a subdivision of the state, negotiated a contract whereby MESC would receive funding to provide job training and referral services for qualified participants. The contract provided that MESC would receive a fixed unit price of $2000 per participant for on-the-job training contracts. At MESC's request the following clause was added to the contract: "To assure that MESC will not operate at a loss, this fixed unit price will be renegotiated if factors result in costs in excess of those

_____

[1]*See* 29 U.S.C. §§ 1576, 1578.

[2]29 U.S.C. §§ 1501-1781.

recognized in the development of unit price." This clause was never invoked.

At the end of 1984, MESC had made a pro fit, i.e., revenues in excess of expenditures, of slightly more than $1.5 million from these fixed unit price contracts, of which $500,000 was reimbursed to MESC. These profits were placed in a general fund. As a result of the profit for 1984, contracts for future years stipulated for lower fixed unit prices. The contracts for later years did not include the renegotiation clause.

In 1987 MESC developed a program called "Project Upgrade." The purpose of the program was to use some profits from the fixed-price contracts to allow employers to upgrade individuals currently employed to a higher skill level and to fill the positions vacated by the upgraded employees with other participants. MESC would use some of its funds to reimburse the employer for one-half of each ungraded individual's salary. Project Upgrade ran for part of 1987 and 1988. MESC used $686,432 in profits to fund the program.

An audit by the office of inspector general of the Department of Labor (DOL) challenged MESC profits for the years 1984-87. An administrative law judge (ALJ) ruled that the 1984 profits were not properly earned and ordered their reimbursement to federal government, along with interest, in the total amount of $976,600.35. After the Secretary of Labor denied a request for review by MDECD, this appeal was brought.

DISCUSSION

A. *Liability Under the Act*

The Act provides that "[e]very recipient shall repay to the United States amounts found not to have been expended in accordance with this [Act]."[3] The Act authorizes the Secretary of Labor to "prescribe such rules and regulations (including performance standards) as the Secretary deems necessary."[4] Pursuant to its rulemaking authority, the Secretary promulgated 20 C.F.R. § 629.37(a) (1983), which provides:

To be allowable, a cost must be necessary and reasonable for proper and efficient

---

[3]29 U.S.C. § 1574(d).

[4]*Id.* § 1579(a).

administration of the program, be allocable thereto under these principles, and, except as provided herein, not be a general expense required to carry out the overall responsibilities of the Governor or subrecipient. Costs charged to the program shall be consistent with those normally allowed in like circumstances in nonfederally sponsored activities and with applicable State and local law, rules or regulations, as determined by the Governor.

The Act further provides that our review of the Secretary's final order "shall be limited to questions of law and the Secretary's findings shall be conclusive if supported by substantial evidence."[5] Substantial evidence means such evidence as reasonable minds might accept as adequate to support a conclusion.[6]

We conclude that substantial evidence supports the ALJ's finding that profits earned in 1984 were not, under the regulation quoted above, "necessary and reasonable for proper and efficient administration of the program." Perhaps the best proof was the undisputed evidence that the $2000 per participant fixed contract generates substantially more revenue for MESC than it needed to perform its job training services under the Act.

Evidence was also presented showing that the state agencies had not engaged in any kind of serious cost analysis in arriving at the $2000 fixed cost per contract for on the job training in 1984. The DOL auditors were unable to reconstruct how the state agencies had arrived at this figure. MESC and MDECD were unable to offer coherent testimony or documentation in support of the $2000 figure. The ALJ also noted that the original figure was based on two "inflation" factors of 5% each which the state agencies could not explain. MDECD does not dispute that MESC in fact earned profits far in excess of its costs in 1984.

MDECD focuses on a part of the ALJ decision discussing the fixed price aspect of the contract with MESC. The ALJ discussed the renegotiation clause of the 1984 contract, which (unlike the later contracts) provided that the parties could renegotiate contract prices if "factors result in costs in excess of those recognized in the development of the unit price." The ALJ reasoned that even though fixed-price contracts are allowed under the Act,[7] the 1984 contract was not a true fixed

---

[5]29 U.S.C. § 1578(a)(3).

[6]*Garcia v. Secretary of Labor,* 10 F.3d 276, 279 (5th Cir.1993).

[7]*See* 20 C.F.R. § 629.38(e)(2) (1983).

contract, since this clause allowed the parties to agree to a higher price if costs exceeded the agreed-upon price, thus limiting any incentive to keep costs under control. MDECD argues that the clause was never invoked, but this fact does not alter our conclusion that the ALJ's ruling is supported by substantial evidence. The ALJ correctly noted that this was not a true fixed cost contract. Moreover, even if the 1984 contract had been a fixed-cost contract, the ALJ was still entitled to disallow the excess fixed price as not "necessary and reasonable for proper and efficient administration of the program" under 20 C.F.R. § 629.37.

MDECD also complains that it was subjected to a penalty or sanction retroactively because the DOL had no policies or interpretations regarding fixed unit price contracts at the time, and only later proposed requirements for such contracts, including the requirement that an "adequate cost price analysis" be performed. We are not persuaded by this argument. As discussed above, at the time the Act plainly required recipients to repay amounts found not to have been spent in accordance with the Act and authorized the Secretary to prescribe rules and regulations, including performance standards, as the Secretary deemed necessary. By regulation costs had to be necessary and reasonable for proper and efficient administration of the program.

MDECD complains that the extra profits earned in 1984 were properly spent on Project Upgrade in later years. The ALJ disallowed this use of profits because MDECD failed to demonstrate that the upgraded individuals under the program were "economically disadvantaged" individuals so as to qualify for JTPA funding.[8] We see no error here by the ALJ.

B. *Limitations*

MDECD claims that this action is barred by limitations, arguing that the agency issued its final determination from its grant officer on July 25, 1990. MDECD maintains that the general limitations provision of 28 U.S.C. § 2462 governs. It states that:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued....

We assume without deciding that MDECD preserved this defense below, and that the DOL's action

---

[8]*See* 29 U.S.C. § 1603.

was "commenced" more than five years after its claim "accrued."

In *United States v. City of Palm Beach Gardens,*[9] we explained that "[i]t is well established that Congress may create a right of action without restricting the time within which the right must be exercised. Moreover, courts have long held that the United States is not bound by any limitations period unless Congress explicitly directs otherwise."[10]

In *Bennett v. Kentucky Dep't of Educ.,*[11] the Supreme Court held that a demand by a federal agency for the refund of federal funds improperly spent by a state agency "is more in the nature of an effort to collect upon a debt than a penal sanction."[12] Although *Bennett* did not involve a statute of limitations defense, we are persuaded that the repayment action here does not involve a claim for a civil fine, penalty, or forfeiture under § 2462. It is instead an action in the nature of one to collect on a debt. Accordingly we reject this defense.

C. *Prejudgment Interest*

MDECD also challenges the award of prejudgment interest by the ALJ. In *West Virginia v. United States,*[13] the Court held that when a state is contractually obligated on a debt to the federal government, the award of prejudgment interest is appropriate, even though no statute specifically provided for the payment of that interest. The Court noted that "[p]rejudgment interest is an element of complete compensation," and that "[b]ecause States have no sovereign immunity as against the Federal Government, any rule exempting a sovereign from the payment of prejudgment interest not only does not apply of its own force to the State's obligation to the Federal Government, but also does not represent a policy the federal courts are obliged to further."[14] We are persuaded that the same reasoning is applicable here. Although this is not a breach of contract case, the action here is

---

[9]635 F.2d 337 (5th Cir.), *cert. denied,* 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981).

[10]*Id.* at 339 (citations omitted).

[11]470 U.S. 656, 105 S.Ct. 1544, 84 L.Ed.2d 590 (1985).

[12]*Id.* at 662-64, 105 S.Ct. at 1549.

[13]479 U.S. 305, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987).

[14]*Id.* at 309-313, 107 S.Ct. at 706-07 (citations omitted).

"in the nature of an effort to collect upon a debt," as *Bennett* teaches, and the award of prejudgment interest here is an element of full compensation.

AFFIRMED.