ALAMO WORKFORCE DEVELOP-
MENT, INC., and M. Catherine
"Cathy" Valdez, Appellants,

v.

Raymundo "Ray" VANN, Appellee.

No. 04–99–00762–CV.

Court of Appeals of Texas,
San Antonio.

March 15, 2000.

Rehearing Overruled May 2, 2000.

Rochel J. Lemler, George E. Hyde, Lemler & Associates, P.C., San Antonio, for Appellant.

Glen D. Mangum, Law Offices of Glen D. Mangum, San Antonio, for Appellee.

Sitting: ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice.

## OPINION

Opinion by: CATHERINE STONE, Justice.

Appellants Alamo Workforce Development, Inc. and Catherine "Cathy" Valdez present this accelerated appeal contesting the trial court's denial of their motion for summary judgment. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(5),(8)(Vernon Supp.2000)(permitting interlocutory appeal of order denying governmental entity's claim of immunity). Because appellants established as a matter of law that they enjoy governmental immunity, we reverse the judgment of the trial court and render judgment in favor of appellants.

### FACTUAL AND PROCEDURAL BACKGROUND

Alamo Workforce Development, Inc., ("AWD") is a non-profit corporation which plans, oversees, and evaluates the delivery of certain publically-funded workforce training and services within the community. In 1997 AWD maintained offices on the Southwest Campus of St. Philip's College, a community college within the Alamo Community College District ("the college district"). Grace Clawson, an employee of AWD, worked at the Southwest Campus, as did appellee Raymundo Vann ("Vann"), who was employed by the college district as a maintenance worker. Clawson reported claims of sexual harassment by Vann to college district officials and to her supervisor,

Catherine Valdez ("Valdez"). Valdez took steps to investigate Clawson's complaints by discussing the matter with Clawson, interviewing some of Clawson's co-workers, and reporting the complaints to certain college district officials. Ultimately the college district found no evidence linking Vann to the reports of harassment.

Vann thereafter sued both the college district and AWD, as well as various employees of both entities. Vann later dismissed his suit against the college district and its employees. As to his claims against AWD and Valdez, Vann alleged defamation and tortious interference with his employment relationship with the college district. AWD and Valdez filed a joint motion for summary judgment claiming: (1) protection from suit on the basis of official immunity; (2) protection from liability for defamation because of qualified privilege; (3) failure of Vann to state a cause of action or to produce evidence of tortious interference with an employment relationship; and (4) protection from imposition of punitive damages because of AWD's status as a governmental entity.

The trial court denied the motion for summary judgment on three specific grounds, ruling that (1) AWD failed to prove it is a government agency entitled to immunity; (2) AWD and Valdez are not protected by the qualified privilege typically enjoyed by employers in personnel matters because this case involves investigation of an employee of another entity; and (3) a fact issue exists regarding malice.

## STANDARD OF REVIEW

We review a summary judgment *de novo*. To prevail on summary judgment, the movant must show there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). When a defendant moves for summary judgment on the affirmative defense of official immunity, the defendant must conclusively prove each element of the defense as a matter of law. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994). If the defendant meets this burden, the plaintiff must then produce evidence raising a genuine issue of material fact to avoid the affirmative defense. *Gonzalez v. City of Harlingen*, 814 S.W.2d 109, 112 (Tex.App.-Corpus Christi 1991, writ denied). In reviewing a summary judgment, an appellate court accepts as true all evidence supporting the non-movant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex.1985). All inferences are indulged in favor of the non-movant, and all doubts are resolved in his favor. *Id.*

## SOVEREIGN IMMUNITY

■ Sovereign immunity, unless waived, insulates the State of Texas, its agencies, and its officials from lawsuits for damages, in the absence of legislative consent to sue the State. *Federal Sign v. Texas Southern Univ.*, 951 S.W.2d 401, 405 (Tex.1997). Appellant AWD claims it is protected by immunity because it is a governmental unit, as defined by relevant provisions of the Texas Tort Claims Act.[1] AWD also bases its claim for sovereign immunity upon the provisions of the Workforce and Economic Competitiveness Act. *See* Tex. Gov't Code Ann. §§ 2308.001—.3121 (Vernon Pamphlet 2000). AWD contends it was created in accordance with the terms of the Workforce and Economic Competitiveness Act and the rules of the Texas Workforce Commission. AWD further claims it is a governmental entity since its purpose is to serve as administrator of

---

1. The Tort Claims Act defines "governmental unit" as: [T]his state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils and courts

... [A]ny other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from the laws passed by the legislature under the constitution. Tex. Civ. Prac. & Rem.Code Ann. § 101.001(2)(A)(D) (Vernon Supp.2000).

public funds and workforce programs under state and federal statutes, such as the Job Training Partnership Act. AWD claims all these facts conclusively prove its status as a governmental unit entitled to sovereign immunity from Vann's suit.

### The Job Training Partnership Act

We begin with a general discussion of the Job Training Partnership Act, which AWD contends provides the impetus for its existence and the source of its funding for local job training programs. The purpose of the Act is to increase educational and occupational skills, to improve the quality of the workforce, and to enhance national productivity and competitiveness. 29 U.S.C.A. § 1501 (West 1999). The Act provides that any state may receive federal funds under the statute, if the state's governor appoints a council to facilitate job training throughout the state. 29 U.S.C.A. § 1792 (West 1999).

In support of their claim that AWD is a governmental entity, AWD and Valdez rely on *Mississippi Department of Economic & Community Development v. United States Department of Labor*, 90 F.3d 110 (5th Cir.1996). The central issue in *Mississippi* concerned the validity of the Secretary of Labor's order requiring reimbursement to the federal government of funds provided under the Job Training Partnership Act, an admittedly different issue than presented in this case. Nonetheless, we find the discussion concerning the structure of the Job Training Partnership Act instructive for our current analysis. As the court explained in *Mississippi*, the Act allocates federal monies to state governments for job training and placement programs for economically disadvantaged persons. *Mississippi*, 90 F.3d at 111. Pursuant to the Act, funds were dispensed to the designated agent for the Governor of Mississippi, the Mississippi Department of Economic and Community Development ("MDECD"). *Id.* A division of the MDECD, the Mississippi Service Delivery Area, used the funds to imple-

ment workforce development programs at the county level. *Id.* Still another subdivision of the MDECD, the Mississippi Employment Service Commission, received government funds for job training and referral services. *Id.* While the question of whether these various entities qualified as governmental agencies was not directly raised, the court referred to the entities as "state agencies" and addressed a defense applicable only to governmental units of a state. *Id.* at 111–112. As set forth below, there are similarities between agency structures in Texas and Mississippi.

### The Texas Workforce and Economic Competitiveness Act

The structure and text of the Texas Workforce and Economic Competitiveness Act ("TWECA") track the language and purpose of the Job Training Partnership Act at the state level. In accordance with the Job Training and Partnership Act, the governor of Texas appoints the Council on Workforce and Economic Competitiveness ("Council") to implement policies for a well-educated and efficient workforce throughout the State. *See* TEX. GOV'T CODE ANN. §§ 2308.051; 2308.052; 2308.101; 2308.102; (Vernon Supp.2000). The TWECA provides that the Council is attached for administrative purposes to the office of the governor. *Id.* at § 2308.051(b). The Council recommends for the governor's approval areas to be designated as "workforce development areas." *Id.* at § 2308.252. Chief elected officials in each designated workforce development area then appoint members to serve on the local workforce development board ("board") to oversee workforce training and services. *Id.* at § 2308.253. The board's actions must comply with the rules promulgated by the Texas Workforce Commission and are subject to review and analysis by the Council. *Id.* at §§ 2308.154(3); 2308.253(a). The chair of the Texas Workforce Commission serves as a member of the Council appointed by the governor. *Id.* at § 2308.52(b)(3)(E). Clearly this statutorily-defined structure establishes that work-

force boards act as arms of the State and carry out the policies established by the Texas Workforce Commission.

Similarly, the structure explained by the court in *Mississippi* is analogous to the framework of statutorily-authorized workforce boards under Title 10 of the Texas Government Code. Job Training Partnership Act funds allocated to AWD funnel through the Texas Workforce Commission to the Council and to local boards in much the same way as Job Training Partnership Act funds siphon through the many sub-agencies to reach the Mississippi Employment Service Commission. *See Mississippi*, 90 F.3d at 111.

### Summary Judgment Evidence

 Turning now to the question of whether AWD proved its status as a workforce board in accordance with the TWE-CA as a matter of law, we look to the summary judgment proof. In its motion for summary judgment, AWD offered the affidavits of its Chairperson, Michael de la Garza, and its President, Nickie Valdez. Vann claims these affidavits provide little more than legal conclusions and are insufficient summary judgment evidence. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984)(holding that recitations of legal conclusions in summary judgment affidavit unsupported by facts will not support a summary judgment). "A legal conclusion in an affidavit is insufficient to *raise an issue of fact* in response to a motion for summary judgment or to *establish the existence of a fact* in support of a motion for summary judgment." *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex.1984)(emphasis added).

Affiant Nickie Valdez testified that she had been affiliated with AWD for four years, serving as president since 1996. She further stated that AWD is wholly funded by the government and is bound by the statutory and administrative requirements of the Job Training Partnership Act and the Texas Administrative Code. Affiant Michael de la Garza similarly testified that he had served as chairman of the

board of directors of AWD for five years. De la Garza further stated that AWD is a governmental subdivision chartered by the State, operated by the Texas Workforce Commission, and charged with administration of Job Training Partnership Act funds in the San Antonio area. This evidence is consistent with statutory provisions which establish service delivery areas for qualifying localities. *See* 29 U.S.C.A. § 1511 (West 1999). Both these individuals qualify as competent affiants with personal knowledge. *See* TEX.R.CIV.P. 166a(f); *Ryland Group, Inc., v. Hood*, 924 S.W.2d 120, 122 (Tex.1996). Further, the statements in the affidavits from the president and chairman regarding the structure and formation of the AWD establish basic facts sufficient to support the summary judgment. *See St. Paul Cos. v. Chevron U.S.A.,* Inc., 798 S.W.2d 4, 7 (Tex.App.-Houston [1st Dist.] 1990, writ dism'd by agr.)(acknowledging that some facts are so basic and straightforward that they are difficult to state in other than conclusory fashion); TIM PATTON, SUMMARY JUDGMENTS IN TEXAS § 6.03[6][a] (2d ed.1996)(noting that a "reasonable conclusion based on the affiant's personal knowledge and factual detail set forth within the affidavit is much more likely to be admissible than a conclusion that is weakly substantiated.")

 The tier-like structure of the Texas workforce boards derives directly from the State and therefore we hold they fall within the protective umbrella of sovereign immunity. We are careful not to extend the blanket of sovereign immunity to every entity which at first blush exhibits the characteristics of a governmental unity. However, AWD established through the affidavits of credible witnesses its status as a recognized workforce board under statutory authority. While Vann contends the affidavits fail on the grounds of specificity, we conclude the content of the affidavits develop a cognizable link to Job Training Partnership Act funds and establish as a matter of law AWD's role as an arm of the State. Similar to local area

councils, the AWD workforce board marshals the skills of the San Antonio area to implement TWECA job training goals. *See generally Parker v. Holbrook*, 647 S.W.2d 692, 693 (Tex.App.-Houston [1st Dist.] 1982, writ ref'd n.r.e.)(applying qualified privilege analysis to local area council executive hearing). Accordingly, we hold AWD established as a matter of law its status as a governmental entity protected by sovereign immunity under the Texas Tort Claims Act.

## OFFICIAL IMMUNITY

 Linked to AWD's claim for sovereign immunity is Valdez's claim for official immunity. Government employees are entitled to official immunity when sued in their individual capacity for official acts. *Gonzalez v. Avalos*, 866 S.W.2d 346, 349 (Tex.App.-El Paso 1993, writ dism'd w.o.j.). Official immunity arises from the performance of (1) discretionary duties (2) in good faith as long as they are (3) acting within the scope of their authority. TEX. CIV. PRAC. & REM CODE ANN. § 101.022 (Vernon 1977); *Chambers*, 883 S.W.2d at 653. This immunity stems from the public policy which encourages public officers and employees to perform their duties without fear of personal liability. *Chapman v. Gonzales*, 824 S.W.2d 685, 687 (Tex.App. - Houston [14th Dist.] 1992, writ denied). Generally, municipal officers are not personally liable for acts performed within the scope of their public duties; public officials are held personally liable only when they have acted wilfully or maliciously. *Richardson v. Thompson*, 390 S.W.2d 830, 835 (Tex.Civ.App.-Dallas 1965, ref'd n.r.e.). Public officials who act wholly without authority become personally liable for their torts and for willful and malicious acts. *See Campbell v. Jones*, 153 Tex. 101, 264 S.W.2d 425, 427 (1954). Valdez argues her actions in response to Clawson's complaint meet the requirements of official immunity.

### Discretionary Duty

 Discretionary acts performed by government officials enjoy immunity from suit. *Brooks v. Scherler*, 859 S.W.2d 586, 588 (Tex.App.-Houston [14th Dist.] 1993, writ denied). Discretionary actions require deliberation, decision, and judgment. *Id.* In contrast, ministerial actions require obedience to order or the performance of a duty about which the actor has no choice. *Id.* In the context of sexual harassment claims, at least one court has held that an employee's compliance with sexual harassment reporting procedure is a discretionary act. *See Brooks*, 859 S.W.2d at 588. The court in *Brooks* recognized that the effectiveness of the program depended upon the ability of the employees to exercise their discretion to determine whether an act occurred and if it should be reported, without the fear of litigation. *Id.*

 Applying these standards to the instant case, we hold that Valdez's actions were discretionary in nature. The affidavit from the president of AWD maintains that as a subdivision of the State, AWD must comply with Title VII reporting procedures related to harassment claims. To this end, the affidavit details that Valdez, in her role as Clawson's supervisor, had a distinct responsibility to report and investigate Clawson's claim. Specifically, as part of Valdez's job responsibility, upon receipt of a complaint, she must complete an initial interview with the complainant and pertinent witnesses, counsel the complainant, and where necessary, direct the complainant to the appropriate official for further resolution.

### Good Faith

 To establish good faith, the government employee must demonstrate that a reasonably prudent official, under the same or similar circumstances, could have believed that his or her actions were justified. *Chambers*, 883 S.W.2d at 656. Good faith can be established as a matter of law when the official's factual recitation

is otherwise supported by the evidence. *Medina County v. Integrity,* 944 S.W.2d 6, 10 (Tex.App.-San Antonio 1996, no writ). Additionally, good faith may be established as a matter of law, despite an affidavit's failure to employ the objective words recommended by *Chambers,* if reasonable minds could not differ from the conclusion drawn from the underlying facts. *Id.*

 Here, the trial court found that the affidavit of Shirley Mendoza, a college district employee, raised a fact issue on the question of malice in the investigative and reporting process. We disagree. The affidavit shows, if anything, a diligent pursuit to accurately report Clawson's claim. In her affidavit, Mendoza states, "I heard Ms. Valdez ask Ms. Clawson several times, "Are you sure? Is this true? We don't want to jeopardize our relationship with the College unless you're sure this is true." We cannot classify this inquiry as malicious or defamatory. In fact, in contrast to Vann's contention, it shows a lack of malice in Valdez's attempt to ascertain the validity of Clawson's claim. Our reading of Mendoza's affidavit, coupled with the affidavit testimony of AWD's president describing reporting procedures, establishes that Valdez's actions were taken in good faith as a matter of law.

### Scope of Employment

Officials must act within the scope of their authority in order to qualify for official immunity. *Chambers,* 883 S.W.2d at 658. An official acts within the scope of her authority if she is discharging the duties generally assigned to her. *Id.*

No evidence exists to suggest that Valdez acted beyond the scope of her employment when she reported Clawson's complaint. Rather, Valdez adhered directly to AWD's reporting policy. Vann contends Mendoza's affidavit raises controverting evidence. As discussed above, however, our review of the affidavit reveals no evidence of bad faith, but rather, suggests Valdez followed the procedure for investigating employee harassment claims. *See Brooks,* 859 S.W.2d at 588 (holding that government employees who report sexual harassment claims act within the scope of their employment). We therefore hold that as a matter of law, Valdez established her status as a government employee entitled to official immunity.

In light of our determination that AWD and Valdez are protected by immunity, we need not reach the other grounds for summary judgment advanced by appellants. For the foregoing reasons, we reverse the trial court's denial of appellants' summary judgment and render judgment in favor of appellants, Alamo Workforce Development, Inc. and Cathy Valdez.