TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00030-CV






The University Interscholastic League, Appellant


v.


Southwest Officials Association, Inc., d/b/a Texas Association of Sports Officials, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. D-1-GN-09-004092, HONORABLE RHONDA HURLEY, JUDGE PRESIDING





O P I N I O N


 The University Interscholastic League ("the UIL") appeals from the trial court's order
denying its plea to the jurisdiction in a suit brought by Texas Association of Sports Officials
("TASO"). In its suit for declaratory and injunctive relief, TASO seeks to prevent the UIL from
implementing its plan to begin regulating the officiating of high school varsity sports in Texas. 
TASO also seeks damages based on a claim that the UIL has tortiously interfered with TASO's
contractual relations with its members. Because we conclude that TASO's claims are barred by
sovereign immunity, we reverse the order of the trial court and dismiss this suit for want
of jurisdiction.


BACKGROUND

 The UIL is an organization governing extracurricular athletic and academic contests
in all Texas public schools and certain private parochial schools. According to the education code,
the UIL "is a part of The University of Texas at Austin." Tex. Educ. Code Ann. § 33.083(b)
(West 2006). In addition to administering extracurricular activities, the UIL is charged by statute
with enforcing certain regulatory schemes, including the "No Pass No Play" policy
applicable to student athletes and the prevention of illegal steroid use. (1) See id. §§ 33.081(c), .091
(West Supp. 2009).

 TASO is a professional trade association made up of approximately 12,000 Texas
sports officials, organized in 196 local chapters across the state. According to its pleadings, TASO
registers sports officials, provides educational materials and training, promotes the professional
interests of Texas sports officiants, advocates on behalf of its members, and conducts formal
disciplinary hearings and oversight of its members. 

 Until recently, section 1204 of the UIL rules ("Rule 1204") provided that member
schools should use TASO-registered sports officials for UIL-sponsored sporting events. In
November 2009, however, the UIL amended Rule 1204 to provide that only those sports officials
who register and pay dues to the UIL may officiate UIL-sponsored varsity team-sport contests. (2) In
response to the amendment to Rule 1204, TASO filed suit, arguing that the UIL was (1) attempting
to exercise an unauthorized delegation of power, (2) improperly imposing an occupation tax, and
(3) tortiously interfering with the contractual relationships between TASO and its individual
members. (3) TASO sought a temporary restraining order and injunctive relief to prevent the UIL from
implementing the changes to Rule 1204, as well as a declaration that the UIL's actions were
unauthorized, illegal, and void. TASO further sought actual and consequential damages resulting
from its claim of tortious interference with contractual relationships. 

 After the trial court granted TASO's request for a temporary restraining order, the
UIL filed a plea to the jurisdiction on the basis of sovereign immunity. The trial court denied the
plea, and the UIL filed the present interlocutory appeal. TASO then filed a petition for writ of
injunction in this Court, seeking to extend the terms of the temporary restraining order to cover
the pendency of the interlocutory appeal. (4) This Court granted the petition and issued a writ of
injunction, incorporating the terms of the temporary restraining order. See In re Texas Ass'n
of Sports Officials, No. 03-10-00029-CV, 2010 Tex. App. LEXIS 856 (Tex. App.--Austin
Feb. 5, 2010, orig. proceeding) (mem. op.).


STANDARD OF REVIEW

 A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of
subject-matter jurisdiction. Harris County v. Sykes, 136 S.W.3d 635, 638 (Tex. 2004). In an appeal
from a plea to the jurisdiction, we "review the face of appellants' pleadings to determine whether
they show a lack of jurisdiction or whether the pleadings, if liberally construed, favor[] jurisdiction."
Atmos Energy Corp. v. Abbott, 127 S.W.3d 852, 855 (Tex. App.--Austin 2004, no pet.). Whether
a trial court has subject-matter jurisdiction is a question of law we review de novo. Westbrook
v. Penley, 231 S.W.3d 389, 394 (Tex. 2007). If the pleadings do not affirmatively demonstrate the
trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the
issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. 
Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226-27 (Tex. 2004). If the pleadings
affirmatively negate jurisdiction, then a plea to the jurisdiction may be granted without allowing an
opportunity to amend. Id. at 227. Unless a pleaded jurisdictional fact is challenged and conclusively
negated, it must be taken as true for purposes of determining subject-matter jurisdiction. City of
Austin v. Leggett, 257 S.W.3d 456, 462 (Tex. App.--Austin 2008, pet. denied). In reviewing a plea
to the jurisdiction, we consider the pleadings and, when necessary to resolve the jurisdictional issues
raised, relevant evidence submitted by the parties. See Miranda, 133 S.W.3d at 227. 


DISCUSSION

 On appeal, the UIL argues that the trial court lacks jurisdiction over TASO's suit
because the UIL is entitled to sovereign immunity and because sovereign immunity has not been
waived with respect to TASO's claims. The UIL also argues that the trial court lacks jurisdiction
because TASO does not have standing to assert its claims.


Entitlement to Sovereign Immunity

 In its first issue on appeal, the UIL asserts that the trial court erred in denying its plea
to the jurisdiction because the UIL is a governmental entity entitled to sovereign immunity. TASO,
on the other hand, argues that the UIL is a private, voluntary association and therefore is not
protected by sovereign immunity. While other courts have addressed the UIL's legal status for
purposes such as federal antitrust law, see Saenz v. UIL, 487 F.2d 1026, 1028 (5th Cir. 1973)
(holding that UIL is governmental entity immune from antitrust liability), and the now defunct
appeal-bond requirement, see UIL v. Maroney, 681 S.W.2d 285, 286 (Tex. App.--Austin 1984,
writ ref'd) (holding that UIL is not governmental entity excused from appeal-bond requirement), the
question of the UIL's legal status under the current statutory scheme for purposes of sovereign
immunity appears to be an issue of first impression. 

 Sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits
in which the State or certain governmental units have been sued unless the State consents to suit. 
Miranda, 133 S.W.3d at 224. The definition of "governmental unit" for purposes of sovereign
immunity under the Texas Tort Claims Act, see Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109
(West 2005 & Supp. 2009), includes, in relevant part:


(A) this state and all the several agencies of government that collectively constitute
the government of this state, including other agencies bearing different designations,
and all departments, bureaus, boards, commissions, offices, agencies, councils, and
courts;


. . .

 

(D) any other institution, agency, or organ of government the status and authority of
which are derived from the Constitution of Texas or from laws passed by the
legislature under the constitution. 



Id. § 101.001(3). 

 In support of its position that the UIL is not protected by sovereign immunity, TASO
argues that no statutory or constitutional provision specifically creates the UIL. While this is true,
section 33.083 of the education code, entitled "Interscholastic Leagues," specifically addresses the
existence and status of the UIL, stating:


(b) The [UIL] is a part of The University of Texas at Austin and must submit its rules
and procedures to the commissioner [of education] for approval or disapproval. The
funds belonging to the [UIL] shall be deposited with The University of Texas at
Austin for the benefit of the league and shall be subject to audits by The University
of Texas at Austin, The University of Texas System, and the state auditor. Copies
of annual audits shall be furnished, on request, to members of the legislature.



Tex. Educ. Code Ann. § 33.083(b) (emphasis added); see also id. § 5.001(3) (West Supp. 2009)
(defining "Commissioner" as "the commissioner of education"). 

 Based on the plain language of section 33.083, the UIL is a component part of The
University of Texas at Austin ("UT-Austin"). See State v. Shumake, 199 S.W.3d 279, 284
(Tex. 2006) (holding that legislative intent should be discerned, when possible, from plain meaning
of words chosen). The University of Texas was created by the Texas Constitution, see Tex. Const.
art. VII, § 10, and it is well settled that state universities are governmental entities subject to
sovereign immunity. See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political
Subdivisions Prop./Cas. Joint Self-Ins. Fund, 212 S.W.3d 320, 324 (Tex. 2006) ("The State's
sovereign immunity extends to various divisions of state government, including agencies, boards,
hospitals, and universities.") (emphasis added); see also Axtell v. University of Tex., 69 S.W.3d 261,
267 (Tex. App.--Austin 2002, no pet.) (affirming grant of UT-Austin's plea to jurisdiction based
on sovereign immunity). 

 TASO contends, however, that section 33.083 is not dispositive as to the UIL's legal
status, citing cases in which courts of appeals, including this Court, have held that the UIL is not a
governmental entity for purposes of exemption from the now defunct appeal-bond requirement. See
Maroney, 681 S.W.2d at 286; UIL v. Payne, 635 S.W.2d 754, 757 (Tex. App.--Amarillo 1982,
no writ). At the outset, we note that neither Maroney nor Payne specifically addresses the issue of
the UIL's entitlement to sovereign immunity. Further, the current version of education code section
33.083, which provides that the UIL "is a part" of UT-Austin, did not exist when Maroney and
Payne were decided. In Maroney, this Court rejected the UIL's argument that it was a part of UT-Austin, noting that the relevant statutory provision at that time stated, "The [UIL], which is a part
of [UT-Austin], must submit its rules and procedures to the State Board of Education for approval." 
681 S.W.2d at 287; see also Act of June 30, 1984, 68th Leg., 2d C.S., ch. 28, art. IV, part F, § 2,
1984 Tex. Gen. Laws 117, 168. The Court held that this statutory language was not "conclusive
recognition" of the UIL's status as a part of the university, but was "simply to identify or make
certain the particular organization which had the duty to submit its rules and procedures to the State
Board of Education for approval." Maroney, 681 S.W.2d at 287. After this Court's decision
in Maroney, the education code was amended to its current version, which definitively states, "The
[UIL] is a part of [UT-Austin]." Tex. Educ. Code Ann. § 33.083(b); see also Act of May 29, 1989,
71st Leg., R.S., ch. 813, § 5.01, 1989 Tex. Gen. Laws 3678, 3710, recodified by Act of
May 27, 1995, 74th Leg., R.S., ch. 260, § 1, sec. 33.083, 1995 Tex. Gen. Laws 2207, 2348. As a
result of this change, the relevant language of the statute can no longer be read as merely a means
of identifying the UIL, as it is now a clear statement that the UIL is in fact "a part of" UT-Austin. 
See National Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000) ("We presume that the
Legislature intended the plain meaning of its words."). Further, in amending the statute, the
legislature not only stated that the UIL is a part of UT-Austin, but also added the requirements that
the UIL deposit its funds with and be subject to audits by UT-Austin, further indicating the
legislature's intent to classify the UIL as a part of UT-Austin. Compare Act of June 30, 1984,
68th Leg., 2d C.S., ch. 28, art. IV, part F, § 2, 1984 Tex. Gen. Laws 117, 168, with Act of
May 29, 1989, 71st Leg., R.S., ch. 813, § 5.01, 1989 Tex. Gen. Laws 3678, 3710.

 In Payne, the court held that the UIL was not exempt from the appeal bond
requirement because it presented no authority to establish its public entity status, noting that the
UIL's assertion that it was a part of UT-Austin appeared for the first time in a post-submission brief. 
635 S.W.2d at 757. The court then went on to conclude that the UIL's status as a part of UT-Austin
was not established on the record, stating, "[W]e do not believe that the [UIL] can incorporate itself
into the University of Texas system by custom and usage or at the behest of a single university
officer." Id. (5) In the present case, the UIL does not rely on custom or usage, but on section 33.083(b)
of the education code, which formally classifies the UIL as a component part of UT-Austin. Given
the manner in which Maroney and Payne can be distinguished from the present case, we do not
consider them to be persuasive authority on the issue of whether the UIL is subject to sovereign
immunity. 

 In addition to its statutorily recognized status as a component part of UT-Austin, the
UIL is also subject to legislative oversight in ways that are inconsistent with private entity status. 
Section 33.083 of the education code requires the UIL to submit its rules and procedures for approval
by the commissioner of education, deposit its funds with UT-Austin, and submit to state audits. See
Tex. Educ. Code Ann. § 33.083(b). Section 33.083(d) requires the UIL to provide annual financial
reports to the executive and legislative branches of state government. See id. § 33.083(d). 
Specifically: 


The [UIL] shall file annually with the governor and the presiding officer of each
house of the legislature a complete and detailed written report accounting for all
funds received and disbursed by the [UIL] during the preceding fiscal year. The form
of the annual report and the reporting time are as provided by the General
Appropriations Act.



Id. Section 33.084 of the education code creates an "interscholastic league advisory council,"
composed of members of the State Board of Education, the state legislature, the UIL legislative
council, public school boards, and three members of the public. See id. § 33.084(a) (West 2006). 
This advisory council reviews UIL rules and makes recommendations regarding the rules to the
governor, the legislature, the UIL legislative council, and the State Board of Education. Id.
§ 33.084(e).

 Notably, the education code also grants the UIL rulemaking authority with respect
to certain state education policies, as well as the authority to impose sanctions for noncompliance. 
See id. § 33.081(b) (West Supp. 2009) (providing that students enrolled in Texas school districts are
subject to UIL rules regarding participation in extracurricular activities when under supervision of
school or district); id. § 33.081(c) (stating that students failing to meet "No Pass No Play"
requirements shall be suspended from participation "or sanctioned by the school district or the
[UIL]"); id. § 33.091(b), (d) (West Supp. 2009) (requiring UIL to adopt rules enforcing statutory
scheme for preventing illegal steroid use by student athletes, including "rules for the annual
administration of a steroid testing program"); id. § 33.203 (West Supp. 2009) (providing that failure
to accurately and truthfully answer questions on form provided by UIL as condition for sports
participation subjects signer of form "to penalties determined by the [UIL]"); id. § 33.206(c)
(West Supp. 2009) (stating that school campus failing to comply with statutory safety requirements
in conducting extracurricular activities "shall be subject to the range of penalties determined by the
[UIL]"); id. § 33.209 (West Supp. 2009) (requiring UIL to incorporate statutory safety requirements
into UIL constitution and rules); see also id. § 33.091(c) (requiring UIL to develop educational
program for student athletes regarding health effects of steroid use); id. § 33.091(f) (authorizing UIL
to increase membership fees to offset cost of implementing steroid-prevention program). 

 In addition to expressly authorizing the UIL to adopt and enforce rules for
implementing state education policies, the legislature has also exercised a measure of authority over
the rulemaking power of the UIL. When the legislature substantially revised the education code
during the 1995 regular session, it included a sunset provision for all UIL rules adopted prior to the
effective date of the new legislation, further indicating that the legislature considers the UIL's
rulemaking power to be a public matter subject to legislative oversight. See Act of May 27, 1995,
74th Leg., R.S., ch. 260, § 1, sec. 33.083, 1995 Tex. Gen. Laws 2207, 2348 ("Each rule of the [UIL]
adopted before September 1, 1995, expires August 31, 1996, unless readopted by the league and
approved by the State Board of Education after September 1, 1995."). (6) 

 TASO argues that the UIL's rulemaking and enforcement authority over certain state
education policies has no bearing on the issue of whether the UIL is a state agency subject to
sovereign immunity because, according to TASO, the UIL's obligation to comply with the education
code is no different from a gas station's obligations to comply with regulations promulgated by the
Texas Commission on Environmental Quality. We disagree. A gas station, or any other private
entity subject to state statutory or regulatory requirements, lacks the type of rulemaking power
granted to the UIL under the education code. The UIL is expressly authorized--even required--to
adopt rules enforcing state education policies, and is further authorized to assess sanctions for
noncompliance. The scope and importance of the UIL's rulemaking power is reflected in the fact
that the legislature has exerted sunset control over UIL rules, see id., as well as the education code
provision requiring that all UIL rules be approved by the commissioner of education, see Tex. Educ.
Code Ann. § 33.083(b).

 In Alamo Workforce Development, Inc. v. Vann, the court was presented with the
question of whether a nonprofit corporation tasked with planning, overseeing, and evaluating the
delivery of publicly funded workforce training and services was subject to sovereign immunity. 
21 S.W.3d 428, 430 (Tex. App.--San Antonio 2000, no pet.). In reaching its conclusion that the
workforce board was a government agency entitled to immunity, the court emphasized the fact that
the board was charged with administration of state workforce development programs created by
statute. Id. at 432-33. The court determined that because local workforce boards were contemplated
by statute and acted as arms of the State in carrying out state workforce policies, they were
governmental entities protected by sovereign immunity. Id.

 Similarly, the UIL is required under the education code to act as an arm of the State
in carrying out certain education policies. See, e.g., Tex. Educ. Code Ann. §§ 33.081(c), .083, .091.
The UIL also enjoys greater statutory recognition than the workforce board in Vann, given that it is
expressly characterized by education code section 33.083 as a part of UT-Austin, which derives its
authority directly from the Texas Constitution. See Tex. Const. art. VII, § 10; see also Whitehead
v. University of Tex. Health Sci. Ctr., 854 S.W.2d 175, 180 (Tex. App.--San Antonio 1993, no writ)
(holding that where health science center was characterized by education code as part of University
of Texas system, it was protected by sovereign immunity). While the UIL may not have specifically
been created by statute, it derives its status and authority from state law. See Tex. Civ. Prac. & Rem.
Code Ann. § 101.001(3)(D). We note also that federal courts have viewed the UIL as a state agency immune from
antitrust liability and have considered actions of the UIL to be state action for constitutional purposes. 
See Cornerstone Christian Schs. v. UIL, 563 F.3d 127, 135-36 (5th Cir. 2009) (reviewing UIL rule
to determine whether it violated constitutional rights to free exercise of religion, due process, and
equal protection); Saenz, 487 F.2d at 1027 (holding that UIL is governmental entity immune from
antitrust liability); Blue v. UIL, 503 F. Supp. 1030, 1034 (N.D. Tex. 1980) (concluding that UIL rules
"constitute state action for the purposes of the Fourteenth Amendment and Section 1983"); see also
Sullivan v. UIL, 616 S.W.2d 170, 172 (Tex. 1981) ("All public schools are eligible for membership
in the [UIL], and its conduct has been held to constitute state action."). But see Payne, 635 S.W.2d
at 757 n.5 (citing Blue and noting that state action is "a different and far broader concept than the
jurisdictional question before this court," in reference to question of whether UIL was state agency
exempt from appeal-bond requirement). In Saenz, the Fifth Circuit stated that "the UIL clearly is
imbued with ample characteristics to warrant the trial court's determination that the organization is
an agency of the State of Texas," and therefore immune from antitrust liability, citing, among other
things, the facts that the UIL is "an integral part of [UT-Austin]" and that its "employees are
employed and paid by the University." 487 F.2d at 1027-28. 

 We also find it significant that the education code includes a mandatory venue
provision requiring that all suits against the UIL be filed in Travis County. See Tex. Educ. Code Ann.
§ 67.26 (West 2002) ("Venue for suits brought against the [UIL] or for suits involving the
interpretation or enforcement of the rules or regulations of the [UIL] shall be in Travis County,
Texas."). This provision is located in chapter 67 of the education code, entitled, "The University of
Texas at Austin," further reflecting the legislature's intent to classify the UIL as part of UT-Austin. 
See id. §§ 67.01-.62 (West 2002 & Supp. 2009). (7) Notably, in addition to creating mandatory venue
for suits against the UIL, chapter 67 identifies a number of other entities that, like the UIL, are
component parts of UT-Austin.  See id. §§ 67.23 (providing that Texas Memorial Museum is "an
integral part of [UT-Austin]"); .51 (providing that McDonald Observatory is part of UT-Austin); .61
(providing that The University of Texas Marine Science Institute is part of UT-Austin). The
mandatory venue provision applicable to the UIL is reminiscent of other venue provisions requiring
or allowing suits against governmental entities to be brought in Travis County. See generally Tex.
Civ. Prac. & Rem. Code Ann. § 15.014 (West 2002) (mandamus petition against head of department
of state government must be filed in Travis County); Tex. Gov't Code Ann. § 554.007 (West 2004)
(public employee of state governmental entity bringing whistleblower claim may sue in county where
cause of action arose or Travis County); id. § 2001.038 (West 2008) (agency rule challenges under
the Administrative Procedure Act must be brought in Travis County); id. § 2001.176 (West 2008)
(petition for judicial review of state agency action in contested case proceeding must be filed in Travis
County, unless otherwise provided by statute). In a 1994 opinion, the supreme court included the
UIL's mandatory venue provision in a list of statutes that "minimiz[e] the litigation costs that
taxpayers must bear by providing state agencies with a convenient venue in which to litigate." K.D.F.
v. Rex, 878 S.W.2d 589, 595 & n.5 (Tex. 1994). Prior to the enactment of the mandatory venue
provision, the San Antonio court of civil appeals upheld a transfer of venue to Travis County based
on the trial court's implied finding that the UIL "is an agency of the State of Texas." Lopez v. UIL,
No. 16275, 1980 Tex. App. LEXIS 3158, at *9-10 (Tex. Civ. App.--San Antonio Mar. 12, 1980, no
writ) (not designated for publication). 

 The Open Records Division of the Attorney General's Office has issued opinions
requiring the UIL to release its records under the Texas Public Information Act, which applies to
public information that is collected, assembled, or maintained by or for a governmental body. See
Tex. Att'y Gen. ORD-3753 (2003) ("[W]e conclude that the UIL must promptly release the
information to the requestor."); Tex. Att'y Gen. ORD-3469 (1999) (ruling that "the signature at issue
must be released" by UIL pursuant to Public Information Act); see also Tex. Gov't Code Ann.
§ 552.002(a) (West 2004) (defining "public information" for purposes of Act).

 Finally, we address TASO's reliance on UIL v. Green, in which the Corpus Christi
court of appeals held that the trial court had jurisdiction over a suit against the UIL and its officers
for injunctive relief in connection with an eligibility ruling related to certain student-athletes. 
583 S.W.2d 907, 909 (Tex. App.--Corpus Christi 1979, no writ). The court in Green never
determined that the UIL was not a government entity subject to sovereign immunity. See id. Rather,
it held that the State's consent to suit was not required because the UIL and its officers "were not sued
in this action in their capacities as agents of the State" and because the plaintiffs "alleged loss of their
civil and constitutional rights." Id. (citing Maritine v. Board of Regents, 578 S.W.2d 465, 473
(Tex. Civ. App.--Tyler 1979, writ ref'd n.r.e.) (holding that State's consent to suit was not required
for claim against state agency for deprivation of vested property interest)). Without addressing the
merits of the court's conclusion that the UIL was not sued in its capacity as an agent of the State, we
note that Green does not stand for the proposition that the UIL is not a governmental entity, but in
fact suggests the opposite, given the court's application of sovereign-immunity principles to an action
brought against the UIL and its officers. See id. 

 While "[w]e are careful not to extend the blanket of sovereign immunity to every entity
which at first blush exhibits the characteristics of a governmental unit," Vann, 21 S.W.3d at 433, we
are dealing here with an entity that is required by statute to implement state education policies,
granted rulemaking and enforcement power over such policies, subjected to extensive oversight from
the legislative and executive branches, and statutorily classified as a component part of a
governmental unit that was created by the Texas Constitution. For these reasons, we hold that the
UIL is a governmental unit subject to sovereign immunity. (8) The UIL's first issue on appeal is
sustained. (9)

Waiver of Sovereign Immunity

 Because the UIL is entitled to sovereign immunity from suit, the trial court lacks
jurisdiction over TASO's claims absent an express waiver of that immunity. See Shumake,
199 S.W.3d at 283. In its second issue on appeal, the UIL argues that the trial court erred in denying
its plea to the jurisdiction because sovereign immunity has not been waived with respect to
TASO's claims.

 In order to determine whether immunity has been waived, we must first discuss the
nature of TASO's claims. In its live pleading, TASO asserts causes of action for (1) "illegal attempt
to exercise an unauthorized delegation of power," (2) "illegal occupation tax," and (3) "tortious
interference with contractual relationships." With respect to its tort claim, TASO has not pleaded
facts that fall under any waiver of immunity found in the Texas Tort Claims Act. See Tex. Civ. Prac.
& Rem. Code Ann. §§ 101.001-.109. TASO concedes on appeal that sovereign immunity has not
been waived for this claim, stating, "TASO has alleged a cause of action for tortious interference with
a contract in the event the UIL is not a state entity." In light of our determination that the UIL is a
state entity, we hold that TASO's tort claim is barred by sovereign immunity.

 According to TASO's petition, its remaining claims for declaratory and injunctive
relief are based on the allegation that the UIL's plan to begin regulating the sports officiating
profession is "an illegal and improper usurpation of power" because "there exists no legislative
enactment that would give the UIL any authority to oversee or regulate any trade or profession."
(Emphasis in original.) TASO further alleges:


[T]he UIL, without any grant of legislative or other authority, now seeks improperly
and illegally to usurp and wholly take over the function of TASO, to tax and regulate
its independent sports official members, and otherwise to act wholly outside the role
of any authority vested in the UIL by the legislature or any other body.



TASO repeats similar allegations throughout its petition, stating that "[t]o the extent that the UIL
maintains that it is a governmental agency or arm of the government, the legislature has not given it
the power or authority to compel the payment of fees, or to tax, regulate, require registration, or act
as the sole or exclusive trade association of an independent profession." Accordingly, TASO's claims
for declaratory and injunctive relief represent ultra vires claims, alleging that the UIL has exceeded
the scope of its authority by attempting to regulate and "tax" an independent profession.

 A suit complaining that a government officer "acted without legal authority" and
seeking to compel the official "to comply with statutory or constitutional provisions" is an ultra vires
suit that is not protected by sovereign immunity. City of El Paso v. Heinrich, 284 S.W.3d 366, 372
(Tex. 2009). Sovereign immunity does not act as a bar to ultra vires suits, not because immunity has
been waived, but because "ultra vires suits do not attempt to exert control over the state--they
attempt to reassert the control of the state." Id. "Stated another way, these suits do not seek to alter
government policy but rather to enforce existing policy." Id.; see also Texas Natural Res.
Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002) ("[S]uits to compel state officers
to act within their official capacity do not attempt to subject the State to liability."). However, these
ultra vires suits "must be brought against the state actors in their official capacity" because the
governmental entity itself remains immune from suit. Heinrich, 284 S.W.3d at 373. In the present
case, TASO brought its ultra vires claims against the UIL rather than a state actor in his or her official
capacity. Under the supreme court's holding in Heinrich, TASO's claims are barred by
sovereign immunity. (10) 

 For the first time on appeal, TASO characterizes its suit as a "rule challenge" to the
validity of the amendments to UIL Rule 1204. (11) Even viewing TASO's claims in this light, the fact
remains that its challenge to Rule 1204 is based on an allegation that the UIL acted ultra vires in
amending the rule to allow it to regulate and collect dues from sports officials. TASO's claims are,
in substance, ultra vires claims. See Texas Dep't of Ins. v. Reconveyance Servs., 306 S.W.3d 256,
258-59 (Tex. 2010) (determining party's claims were, "in substance," ultra vires claims because they
were based on allegations that agency acted beyond its statutory authority); see also City of Austin
v. Austin Gas Light & Coal Co., 7 S.W. 200, 203 (Tex. 1887) (holding that city acted ultra vires in
attempting to exercise taxing power not authorized by Texas Constitution). TASO, however, argues
that sovereign immunity does not bar declaratory-judgment actions challenging the validity of
legislative pronouncements when the relevant governmental entities must be made parties to such
challenges. See Heinrich, 284 S.W.3d at 373 n.6 (citing Tex. Civ. Prac. & Rem. Code Ann.
§ 37.006(b)). Section 37.006(b) of the UDJA provides that in "any proceeding that involves the
validity of a municipal ordinance or franchise," the municipality must be made a party and that if a
"statute, ordinance, or franchise is alleged to be unconstitutional," the attorney general is entitled to
be heard. Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b). UIL Rule 1204, however, represents
neither a "municipal ordinance or franchise," nor a "statute," and therefore is not subject to section
37.006(b). Further, institutions of higher education, such as UT-Austin, are not governed by the
Administrative Procedure Act (APA), see Tex. Gov't Code Ann. § 2001.003(7)(E) (West 2008), and
therefore are not subject to the APA's legislative grant of subject-matter jurisdiction for suits
challenging agency rules. See id. § 2001.038 (allowing validity or applicability of agency rule to be
determined in action for declaratory judgment and requiring that agency be made party to action); see
also Texas Dep't of Pub. Safety v. Salazar, 304 S.W.3d 896, 903-04 (Tex. App.--Austin 2009, no
pet.). Because there is no statute requiring that the UIL be made a party to suits challenging the
validity of its rules, the UIL's immunity is not waived with respect to TASO's suit alleging that it
exceeded its authority in amending Rule 1204. See Tooke v. City of Mexia, 197 S.W.3d 325, 342-43
(Tex. 2006) (holding that immunity is not waived absent clear legislative intent to do so). TASO's
challenge to Rule 1204 remains an ultra vires claim that must be brought against a state actor in his
official capacity. (12) 

 TASO argues that in the event this Court determines that its suit is barred by sovereign
immunity, it should be afforded the opportunity to amend its pleadings and cure the jurisdictional
defect by naming a state official as a party to suit. See Miranda, 133 S.W.3d at 226-27 (holding that
if pleadings do not affirmatively negate jurisdiction, plaintiff should be afforded opportunity to
amend). Under the circumstances presented here, however, the jurisdictional defect in TASO's
pleadings cannot be cured by amendment because the sole defendant is immune from suit. The
opportunity to amend pleadings to cure a jurisdictional defect has not been extended to the
opportunity to substitute a state-entity defendant with a state actor acting in an official capacity in an
ultra vires claim that would otherwise be barred by sovereign immunity. See Reconveyance Servs.,
306 S.W.3d at 259 (dismissing ultra vires suit for want of jurisdiction where state entity, rather than
state official, was sole defendant).

 Because TASO brought its ultra vires claims against the UIL rather than a state official
acting in an official capacity, TASO's suit is barred by sovereign immunity and the trial court erred
in denying the UIL's plea to the jurisdiction. We reverse the trial court's order and dismiss this suit
for want of jurisdiction.


Standing

 In light of our conclusion that TASO's suit is barred by sovereign immunity, we need
not reach the UIL's third issue on appeal, in which it argues that the trial court lacked subject-matter
jurisdiction over this suit because TASO did not have standing to bring its claims.



CONCLUSION

 We reverse the trial court's order denying the plea to the jurisdiction and dismiss this
cause for want of jurisdiction.



 

 Diane M. Henson, Justice 

Before Justices Patterson, Puryear and Henson

Reversed and Dismissed

Filed: August 27, 2010


 


 
1. The "No Pass No Play" policy dictates that a student receiving a grade lower than the
equivalent of a 70 on a scale of 100 in any academic class shall be suspended from UIL-sponsored
activities or otherwise sanctioned by the UIL or the student's school district. See Tex. Educ. Code
Ann. § 33.081(c) (West Supp. 2009). Section 33.091 of the education code requires high school
athletes to agree to submit to random testing for the presence of illegal steroids as a condition of
participation in UIL-sponsored athletic contests. See id. § 33.091 (West Supp. 2009).
2. The amended rule does not prohibit officials from registering with both TASO and the UIL. 
Officials who do not register with the UIL remain free to officiate non-varsity sporting events and
individual-sport contests such as tennis, golf, swimming, and wrestling.
3. TASO's tortious-interference claim was based in part on an allegation that the UIL had
persuaded certain local TASO chapters to turn over collected membership dues to the UIL.
4. An interlocutory appeal from an order denying a plea to the jurisdiction "stays all other
proceedings in the trial court pending resolution of the appeal." Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014(b) (West 2008); see also id. § 51.014(a)(8). In the absence of a writ of injunction, the trial
court's temporary restraining order would have expired while the interlocutory appeal was pending.
5. Because the statutory provision described by this Court in Maroney was not enacted until
1984, it appears that the court in Payne did not have the benefit of any legislative pronouncement
regarding the UIL's relationship to UT-Austin. See Act of June 30, 1984, 68th Leg., 2d C.S., ch. 28,
art. IV, part F, § 2, 1984 Tex. Gen. Laws 117, 168. 
6. In support of its position, TASO argues that during the 2003 legislative session, a single
legislator, in an attempt to pass a bill that would abolish the UIL, argued before the House
Committee on Public Education that the UIL does not legally exist, has no legislative oversight, and
is not subject to sunset review. See Hearings on Tex. H.B. 580 Before the House Comm. on Pub.
Educ., 78th Leg., R.S. (April 1, 2003) (statement of Rep. Joe Nixon). First, the statement of a single
legislator does not determine legislative intent. AT&T Commc'ns of Tex., L.P. v. Southwestern Bell
Tel. Co., 136 S.W.3d 517, 529-30 (Tex. 2006). Second, the proposed bill was left pending in
committee. Third, a legislative mandate of formal sunset review is not a prerequisite to
governmental entity status. This Court, for example, is free from sunset review, as is The University
of Texas System. See Sunset Advisory Commission, Guide to the Sunset Process 1 (Dec. 2009).
7. One might argue that the mandatory venue provision constitutes a waiver of immunity for
suits against the UIL regarding the interpretation or enforcement of its rules or regulations. But see
Tooke v. City of Mexia, 197 S.W.3d 325, 332-33 (Tex. 2006) (holding that waiver of immunity must
be clear and unambiguous); SE Ranch Holdings, Ltd. v. City of Del Rio, No. 04-06-00640-CV, 2007
Tex. App. LEXIS 6939, at *8-9 (Tex. App.--San Antonio Aug. 29, 2007, pet. denied) (mem. op.)
(holding that contract language providing mandatory venue for resolution of disputes did not
represent clear and ambiguous waiver of immunity). The legislative history of section 67.26 states
that the mandatory venue provision became necessary in light of the facts that after enactment of
extracurricular eligibility rules, there were "numerous suits filed in state district courts regarding
[UIL] eligibility rulings,"and that these suits had "the effect of disrupting the planned extracurricular
activities." See House Comm. on State Affairs, Bill Analysis, Tex. H.B. 63, 69th Leg., 3d C.S.
(1986). This Court has previously been presented with cases in which students have challenged the
interpretation or enforcement of a UIL rule in connection with a finding of ineligibility to participate
in extracurricular activities. See UIL v. Hatten, No. 03-03-00691-CV, 2004 Tex. App. LEXIS 3372,
at *1-2 (Tex. App.--Austin Apr. 15, 2004, no pet.) (mem. op.); UIL v. Buchanan, 848 S.W.2d 298,
300 (Tex. App.--Austin 1993, no writ). The present case, however, is not a challenge to the
interpretation or enforcement of a UIL rule in the context of an eligibility ruling, but instead
represents an ultra vires claim based on the UIL's plan to begin regulating sports officiants. The
ultra vires nature of TASO's claims will be addressed more fully in our discussion of whether
sovereign immunity was waived.
8. Because the UIL's state entity status is established as a matter of law by the relevant legal
authorities, we need not address TASO's argument that the UIL improperly attempts to introduce
evidence of its state entity status for the first time on appeal. See generally Employees Ret. Sys.
v. Putnam, LLC, 294 S.W.3d 309, 323 (Tex. App.--Austin 2009, no pet.) (holding that trial court
need not allow discovery before ruling on plea to jurisdiction where party's status as public entity
was conclusively resolved as matter of law). In resolving the matters before us in this appeal, we
do not consider any evidentiary materials that were not included in the trial court's record, including
any materials that were produced for the first time on appeal and attached to appellate briefs.
9. To the extent that TASO also argues that we do not have jurisdiction over this appeal
because the UIL is not a governmental unit entitled to an interlocutory appeal from an order denying
its plea to the jurisdiction, this argument fails as well. See Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014(a)(8) (West 2008) (providing for interlocutory appeal from order granting or denying plea
to jurisdiction by governmental unit as defined by section 101.001(3) of civil practice and remedies
code); see also id. § 101.001(3) (West 2005). The UIL qualifies as a "governmental unit" under
section 101.001(3) both as a part of UT-Austin, which derives its authority directly from the Texas
Constitution, and because it derives its own status and authority from the education code. See id.
§ 101.001(3)(D) (defining "governmental unit" to include any "institution, agency, or organ of
government the status and authority of which are derived from the Constitution of Texas or from
laws passed by the legislature under the constitution").
10. While TASO contends that sovereign immunity is waived under the Uniform Declaratory
Judgments Act (UDJA), see Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-37.011 (West 2008), the
UDJA is not a general waiver of sovereign immunity and does not "extend a trial court's
jurisdiction." Texas Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855
(Tex. 2002). A declaratory-judgment action is merely a procedural device for deciding matters
already within a trial court's subject-matter jurisdiction. See Texas Ass'n of Business v. Texas Air
Control Bd., 852 S.W.2d 440, 444 (Tex. 1993).
11. In its response to the UIL's plea to the jurisdiction, TASO describes its suit as "seeking
a declaration that the UIL is without any vested authority to take over the profession of sports
officiating, and that no body has delegated to it the authority to tax or regulate sports officials."
12. We express no opinion on the merits of TASO's ultra vires claims, including whether, in
the event that TASO brought these claims against a government officer acting in an official capacity,
it could "allege, and ultimately prove, that the officer acted without legal authority or failed to
perform a purely ministerial act." City of El Paso v. Heinrich, 284 S.W.3d 366, 372 (Tex. 2009).