ACCEPTED
01-14-00908-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
2/2/2015 11:59:42 AM
CHRISTOPHER PRINE
CLERK

**01-14-00908-CV**

_____

**IN THE FIRST COURT OF APPEALS
HOUSTON, TEXAS**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
2/2/2015 11:59:42 AM
CHRISTOPHER A. PRINE
Clerk

_____

**WILLIAM MARSH RFICE UNIVERSITY, RICE UNIVERISTY POLICE
DEPARTMENT, AND OFFICER HENRY CASH**
*Defendants / Appellants*


**V.**


*MICHAEL CLAYTON THOMAS*
*Plaintiff / Appellee*

_____


**APPEAL FROM THE 80TH JUDICIAL DISTRICT
HARRIS COUNTY, TEXAS**

_____


**APPELLEE'S BRIEF**

══════════════


**To the Honorable First Court of Appeals:**

Michael Clayton Thomas, Appellee, files his response to the appeal of William Marsh Rice University, The Rice University Police Department and Officer Henry Cash.

Mr. Thomas, Appellee, requests this Court find that the Appellants are precluded from filing an interlocutory appeal in this case.

In the alternative, Mr. Thomas, Appellee, requests this Court affirm the denial of summary judgment rendered by the lower court in its entirety.

1

## MOTION TO ABATE

The first dispositive issue before the Court is whether William Marsh Rice University (RICE), The Rice University Police Department (RUPD) and Officer Henry Cash (CASH) have standing to bring an interlocutory appeal. In summary, both this Court and the Fourteenth Court of Appeals have previously ruled on this issue and denied such appeal, *infra*.

The issue of whether Appellants and similarly situated entities and persons have standing pursuant to Texas Civil Practice and Remedies Code §51.014 to file an interlocutory appeal of denial of summary judgment is currently pending before the Supreme Court of the State of Texas in another case, *William Marsh Rice University v. Rafaey, 417 S.W.3d 667* (Tex. App.-Houston [14th Dist.] 2013, pet. filed). Therefore, Appellant's position is that the issue is moot until such time as the Supreme Court rules.

In the interest of both judicial and practical economy, Appellee urges this Court to abate this matter until the Supreme Court rules. Appellee avers that this matter attempts to litigate at the appellate level an issue that is currently before the highest court in this state. Appellants likewise request abatement. See Appellants' brief at page 12, ¶ 1.

Notwithstanding, Appellee's response to Appellants' argument on this issue of standing to appeal is set forth herein, *infra*.

## SUMMARY OF APPELLE'S RESPONSE

1.     Extant case law precludes interlocutory appeal by Rice University, RUPD and/or Officer Cash.

2.     There was no probable cause upon which to base the arrest of THOMAS.

3.     CASH did not act in good faith and, therefore, cannot meet that element of his affirmative defense of Official Immunity.

4.     CASH was required to perform a ministerial act as a condition precedent before he could perform the act of arrest made the basis of this lawsuit, which he claims is discretionary.  He did not do so.  Therefore, he was not performing a discretionary function and he cannot meet the discretionary act element of his affirmative defense of Official Immunity.

5.     CASH was not within the scope of his authority when he arrested THOMAS.

6.     CASH cannot support the elements of the affirmative defense of Official Immunity.  Therefore, he is not eligible for relief based on that defense.

7.     Because CASH is not eligible, RICE UNIVERSITY POLICE DEPARTMENT and RICE UNIVERSITY are also not eligible for the affirmative defense.

8.     Genuine issues of material fact exist that preclude summary judgment.

# STANDARD OF REVIEW

## *Summary Judgment*

Review of summary judgments is de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004); *Nalle Plastics Family L.P. v. Porter, Rogers, Dahlman & Gordon, P.C.*, 406 S.W.3d 186, 199 (Tex. App. — Corpus Christi 2013, pet. denied). The Court must take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Joe*, 145 S.W.3d at 157.

On appeal, the movant for traditional summary judgment still bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). Courts review the judgment by considering all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

## *Probable Cause*

Probable Cause is described in The Texas Penal Code, Article Fourteen. The first prong of article 14.04 requires that the officer have "satisfactory proof" that a felony has been committed by an offender. Probable cause to arrest a person

4

is present when there are facts and circumstances within the officer's knowledge and of which he has reasonable trustworthy information that would warrant a reasonable man in believing that a particular person has committed or is committing a crime." *Webb v. State,* 760 S.W.2d 263, 274 (Tex.Crim.App. 1988), *cert. denied,* ___ U.S. ___, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989).

### *Official Immunity*

Because the doctrine of official immunity is an affirmative defense, to prevail on summary judgment, a movant must establish **conclusively** each element of this affirmative defense. (Emphasis added) *See Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex.1994). A "matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence." *McCartney, M.D. v. May, M.D.*, 50 S.W.3d 599, 604 (Tex.App.-Amarillo 2001, no pet.); *see also Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1965) (defendant "who conclusively establishes all of the elements of an affirmative defense is entitled to summary judgment").

Thus, the burden is on Appellants to establish conclusively that CASH was (1) a government officer or employee (2) sued in his individual capacity, entitled to official immunity from a suit arising from (3) performing a discretionary duty (4) in good faith (5) within the scope of his authority. *See Telthorster v. Tennell*, 92

S.W.3d 457, 461 (Tex.2002); *Methodist Hospitals of Dallas v. Miller*, 405 S.W.3d 101, 106 (Tex.App.-Dallas 2012)

A governmental employee is entitled to official immunity for the good faith performance of discretionary duties within the scope of the employee's authority. *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000). A discretionary act is one involving "personal deliberation, decision and judgment;" in contrast, actions requiring obedience to orders "or the performance of a duty to which the actor has no choice" are ministerial. *City of Houston v. Jenkins*, 363 S.W.3d 808, 814 (Tex.App.-Houston [14th Dist.] 2012) citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994). Thus, if the duty is mandated by law, directive or policy, then the performance of the duty is a ministerial act, and there is no official immunity for the failure to act.

Good faith is established when it is proved that a reasonably prudent government official, under the same or similar circumstances, could have believed that his actions were justified. *City of Lancaster v. Chambers*, 883 S.W.2d at 656. A government employee acts in bad faith only if he could not have reasonably reached the decision in question. *University of Houston v. Clark*, 22 S.W.3d at 918. Good faith can be established as a matter of law when the employee's factual recitation is otherwise supported by the evidence. *Alamo Workforce Development,*

*Inc. v. Vann*, 21 S.W.3d 428,435 (Tex.App.-San Antonio 2000, rhrg overruled). Examination of Cash's recitation is not supported by the evidence.

## BRIEF FACTUAL SUMMARY [1]

1.    On November 9, 2011, THOMAS arrived peacefully at the Rice University Campus. He parked in the Rice Parking Garage, obtained a payment voucher, and walked into the building where his wife works. He was there to see his wife. Catherine Higgins. The parties were in the process of a divorce at the time. THOMAS had just received a copy of a Mutual Temporary Restraining Order (MTRO) dated November 8, 2011. He desired to speak with his wife about the effect on the children.

2.    THOMAS entered the men's restroom, used the facility, exited and went to the Security Desk. When THOMAS entered the building, THOMAS saw a guard at the security desk. When THOMAS exited the restroom, the desk was unmanned.

3.    At all times while on Defendants' property, THOMAS behaved in a peaceful and non-threatening manner.

_____

1  References to the Record in support of these facts appear in the body of the brief at the appropriate places. The facts set forth herein are undisputed.

4.      THOMAS waited at the security desk for five to ten minutes. Then, Officer CASH, an African American officer of Rice University Police Department approached THOMAS. CASH asked THOMAS if he could help him.

5.      THOMAS responded that he was waiting for the security officer to come in order to summon someone for him. CASH asked THOMAS who that person was. THOMAS responded that it was his wife, Dr. Catherine Higgins.

6.      CASH asked THOMAS who he was. THOMAS identified himself. CASH immediately told THOMAS to place his hands behind his back. CASH stated, "You're under arrest," and placed THOMAS in handcuffs at 12:08 PM.

7.      CASH left, went to Higgins office and returned, holding a document. He held it out to THOMAS and told THOMAS that he was "in violation of this Order." CASH told THOMAS he was "being arrested for violating a protective order."

8.      The document was not a Protective Order. It was a Mutual TRO dated November 8, 2011 and signed by the Judge, 310th Judicial District Court. CR 187. There was no injunctive language therein that would warrant an arrest or detention at that time. There was no Protective Order.

9.      There was no finding of family violence, which is mandatory in order for a family court to issue a Protective Order. THOMAS exhibited no threatening behavior. CASH did not otherwise explain his stated reason for the arrest.

8

10. THOMAS was transported in handcuffs to a booking station. His fingerprints and picture were taken.

11. He was transferred to the Harris County jail where he was stripped to his underwear and searched. His possessions were taken. He was put into a holding cell.

12. Charges were rejected. Three hours later, he was transported back to the Rice University Police Station. There, he was released without explanation.


## RELEVANT TIME LINE

The relevant events took place on November 9, 2011 as follows.[2] Times are taken from Exhibits 4 and 9, CR 179 and 205 depositions and other documents as noted.

11:54 AM     THOMAS walked from the parking garage to the Biosciences Building. He was seen by Higgins or her coworkers. THOMAS went to the first floor men's' room. Exhibit 2, 35/9-19. CR 169. Then, THOMAS went to the first floor security desk and waited for approximately five minutes. Exhibit 2, 36/1-10 and 38/2-5. CR 169.

_____

2     Times not definitively stated are reasonably estimated as cumulative minimum and maximum. Deposition excerpts are noted as page/line; i.e 12/2 is page 12, line 2. CR indicates the Court's Record.

9

11:58 According to the Exhibit 4, CR 179, prepared by RICE, Catherine Higgins called Rice University Police Department (RUPD) advising that her husband is on the property and that she has a "restraining order." She did not use the words protective order.[3] Exhibits 3, 4. CR 176 and 179.

11:58 The RUPD dispatcher then issued a call for assistance and expressly stated that there was a "restraining order" at issue.[3] The words "protective order" were not spoken. Exhibits 3, 4. CR 176 and 179.

11:58-12:03 According to THOMAS, he went to the first floor security desk and waited for approximately five minutes. Exhibit 2, 36/1-10 and 38/2-5. CR 169. THOMAS saw CASH approaching from outside the building and CASH entered the building. Exhibit 2, 39/1-17. CR 169.

11:56 According to Exhibit 9, CR 205, prepared by RICE, CASH reported that he was in the building with THOMAS. This would place CASH there before the dispatch notice was issued.

_____

3. The words "protective order" were falsely written in the reports by CASH, himself. See infra.

10

| 12:03-13 | CASH went to the desk, confronted THOMAS, questioned him and arrested him. Exhibit 2, 40/14-25 and 44/12-16. CR 169. At that time, THOMAS was told he was being arrested for violating a protective order. Exhibit 2, 42/12-24 and 45/15-25. CR 169. This took about 10 minutes. Exhibit 2, CR 169. |
|---|---|
| 12:08 PM | Time of arrest according to DA report and RUPD reports. Exhibits 4, 8 and 9. CR 179, 199, 205. This time is undisputed. |
| 12:08-13 | There were now three officers. Exhibit 2, 47/11-20, CR 169. They talked with THOMAS. Then, CASH left to go to Higgin's office. Exhibit 2, 49/12-19, CR 169. |
| 12:13-26 | CASH walked to Higgin's office where, he testified, he waited five to seven minutes, then talked to her. Exhibit 7, #14. CR 194. Assume one minute walking, five to seven waiting and five talking. |
| 12:26 | CASH left Higgins' office and stated that he called the DA. Exhibit 7, #15. CR 194. |
| 12:26-31 | Assume five minute conversation with DA. |
| 12:26 | According to Exhibit 9, CR 205, THOMAS was transported to the West University Police Department at 12:26, at the time that it appears CASH would have been talking to the DA. This time undisputed. |

11

12:31-41    According to CASH, subsequent to the conversation with the DA, he decided to arrest THOMAS.  Exhibit 7, #16.  CR 194.  This means he had to return to the area where THOMAS was being held and make the arrest.

This is contrary to the testimony of THOMAS (Exhibit 2, 40;14-25 and 44/12-16. CR 169) and the written reports of DA and RUPD (Exhibits 4 and 8) which indicate the arrest was at 12:08.

Moreover, THOMAS was in transit at the time CASH states he returned and arrested THOMAS.


## RESPONSIVE EXHIBITS

1.    Deposition excerpts of Henry Cash, CR 155.

2.    Deposition excerpts of Clay Thomas, CR 169.

3    Recordings "1, 2, 3 and Radios" of the Rice University Police Dispatcher, CR 176.

4.    Rice University Incident Report RUPD110680[4] which was created solely by Officer CASH, CR179.

5.    Rice University Police Department General Directive: 08,  CR 184.

6.    Mutual Temporary Restraining Order, Cause No. 2011-65679,  CR 187.

---
4   The words "protective order" were falsely written in the reports by CASH, see infra.

7.    Affidavit of Henry Cash, CR 194.

8.    DA Intake Management System Report DIM601, CR 199.

9.    Rice University Police Department Detailed Report #11002139. CR 205.


RELEVANT QUESTIONS OF FACT

There exists a significant disparity of material facts that will be discussed in this motion. Appellee avers that the facts differ enough to warrant denial of summary judgment on that issue alone. Significant questions of fact are:

1.    Did CASH know, or should he have reasonably known, that the alleged protective order was only a mutual temporary restraining and/or did he ignore the fact that no protective order existed at the time of the arrest?

2.    Did CASH knowingly make a false statement to DA Keagle that a protective order existed?

3.    A protective order normally contains a distance prohibition. Thomas never reached the area in which Higgins worked and was never close enough to speak with her or be a physical threat to Higgins that day. Thomas was passive. Technically speaking, even if there had been a protective order, THOMAS could not have been arrested for violation of the order until he breached the specified distance or appeared threatening. Therefore, what exactly is the violation that

13

THOMAS committed that would warrant arrest for "violating the protective order" – which was the sole reason stated by CASH for the arrest?

4. If CASH made a knowing false statement to DA Keagle, did DA Keagle advise CASH to arrest THOMAS based solely on the misrepresentation of CASH? Did DA Keagle advise CASH to make the arrest before Keagle attempted to verify the alleged protective order?

5. Did CASH, in fact, arrest THOMAS before speaking with DA Keagle?

6. Did CASH act as a reasonable officer under the same or similar circumstances would have acted?

7. Did CASH act in good faith?

8. Because CASH did not actually verify the existence of a protective order, could he truly have been performing a discretionary function since the verification was a ministerial and specific function and a mandatory condition precedent to the discretionary function?

8. Does the course and scope of CASH's employment encompass ignoring written policy mandate, ignoring a written order of a sitting judge, making false statements to the District Attorney's representative, and/or making false statements in his official report?

## ARGUMENT AND AUTHORITY

**1**.    **Extant case law precludes interlocutory appeal by Rice University and/or Officer Cash.**

Appellee avers that Rice University and/or Officer Cash do not have standing pursuant to Texas Civil Practice and Remedies Code §51.014(5) to file an interlocutory appeal of denial of summary judgment because Cash is not an officer or employee or the state.

Appellant argues that the Supreme Court decision in *Klein v. Hernandez,* 315 S.W.3d 1, 5 (Tex. 2010) is dispositive.  Ironically, this Court held in its review of *Klein* that "Klein was not entitled to the same rights as an `actual' employee of a state  agency," and more particularly "that the Legislature did not intent to extend sovereign or official immunity … to a resident of <u>supported </u>medical school by merely casting the resident as `an employee of a state agency' for the purposes of determining liability."  *Id citing Klein v. Hernandez,* 260 S.W.2d 1, 9-11 (Tex. App. - Houston [1ˢᵗ Dist.] 2008).

With respect to the instant case, the decision in *Klein,* 315 S.W.3d at 1 is distinguished because Klein was a "resident physician at a private medical school in a residency program coordinated through a supported medical school at a public hospital," *Klein,* 315 S.W.3d at 2, and as such was an employee of a state agency, *Klein,* 315 S.W.3d at 2.  It is that nexus and only that nexus – the supported program -  that gave Klein standing to appeal.

In the instant case, Rice University is not a public university and Officer Cash is not performing duties within any semblance of a "supported" program with a public agency or institution. In their brief at 14, Appellants ignore the critical factor of Klein's participation in a supported program at a public hospital when they argue that Klein is dispositive of the issue of standing to appeal in this case.

Moreover, the Texas Supreme Court has held that "the words of Section 51.014(a)(5) offer no indication or suggestion that it applies to any entity other than a state official, the only entity which it describes." *William Marsh Rice Univ. v. Coleman,* 291 S.W.3d 43, 46 (Tex.App. – Houston [14th Dist.] 2009) citing *Texas A & M University Sys. v. Koseoglu*, 233 S.W.3d 835, 843 (Tex. 2007). "Section 51.014(a)(5) does not permit an institution to bring an interlocutory appeal as a "proxy for a state or local agency." *Coleman,* 291 S.W.3d at 46. "Because Rice is asserting the affirmative defense of official immunity on behalf of its employees who are not employees of the state or a political subdivision of the state, the legislature has not provided an avenue for Rice to bring an interlocutory appeal of the trial court's order." *Id.*

Therefore, at this time, operative case law holds that Rice University and Cash do not have standing to file their interlocutory appeal. See *Klein v. Hernandez,* 260 S.W.2d at 9-11; *William Marsh Rice Univ. v. Coleman,* 291 S.W.3d at 46; *William Marsh Rice University v. Rafaey, 417 S.W.3d 667.*

16

It seems improvident to assume that the Supreme Court will argue against its holding in *Koseoglu* based upon the unique "supported program" status of Dr. Klein.

**2.    There was no probable cause.**

Probable cause to arrest a person is present when there are facts and circumstances within the officer's knowledge and of which he has reasonable trustworthy information that would warrant a reasonable man in believing that a particular person has committed or is committing a crime. *Webb v. State,* 760 S.W.2d 263, 274 (Tex.Cr.App. 1988).

Appellants overuse the word "detain" in their brief in order to draw attention away from the actual arrest of THOMAS. Appellee did not sue because he was detained. He sued because he was arrested for violation of a protective order that never existed. This is undisputed.

THOMAS has raised and raises below numerous questions of the reasonableness of CASH's actions. Appellants frequently hide behind the words "reasonable" and "reasonableness" in their brief. What one must remember at this juncture is that reasonableness and what is reasonable is a question of fact.

Appellants aver that CASH acted reasonably; Appellee avers that he did not act reasonably. When there are two interpretations, the issue must be determined by the trier of fact. *Gale v. Lucio*, 445 S.W.3d 849 (Tex.App.-Houston [1st Dist.]

2014); *Intntl Realty, Inc. v. 2005 RP West Ltd.,* 01-12-00258-CV (Tex.App.-Houston [1st Dist.] 10-7-2014); *Mindi M. v. The Flagship Hotel, Ltd.*, 14-13-00515-CV (Tex.App.-Houston [14th Dist.] 6-26-2014).

According to Exhibit 5, CR 184, **the express written procedure of Rice University that governs the circumstances of the arrest,** RUPD General Directive: 08B2: "When probable cause exits [sic] to believe a person has committed an action which violates the terms of a valid Protective Order, **prior to arrest**, **verification of existence of Protective Order will be made**." (Emphasis added.)

Appellants have never presented evidence other than the self-serving statement of CASH in support of their specious allegation of Probable Cause.

It is undisputed that THOMAS was peaceful and did not exhibit aggressive tendencies.

It is undisputed that the Order CASH alleged THOMAS violated was a Mutual Restraining Order, not a Protective Order. Exhibit 6, CR 187.

It is undisputed that the Restraining Order makes absolutely no mention of a finding of family violence. *Id*.

It is undisputed that the Restraining Order in no way prevents THOMAS from peacefully going to his wife's place of employment with the purpose of meeting with his wife to discuss the children. *Id*.

18

It is undisputed that THOMAS did not violate the Restraining Order on the date and time relevant herein.

It is undisputed that Catherine Higgins advised the RUPD dispatcher that a "Restraining Order," not a Protective Order, was at issue. Exhibits 3, CR 176.

It is undisputed that the RUPD dispatcher used the words "restraining order" and not protective order in her dispatch. *Id.*

It is undisputed and unrefuted that CASH did not**, prior to arrest, verify the existence of the alleged Protective Order.**

Appellants have tried to spin the truth, to make argument out of whole cloth and to otherwise obscure the truth of the matter, but the simple truth is that Appellants offer no actual hard evidence that the existence of the alleged Protective Order – which never existed in the first place – was verified prior to the arrest of Mr. Thomas. It was not, and could not be, verified prior to the arrest.

CASH testified that Catherine Higgins did not tell him that she was a victim of family violence. Exhibit 1, 41/20-22, CR 155. Nor is it reasonable to believe CASH's contention that she said she had a protective order when she had already used the words "restraining order" to report the incident and stated that there was no family violence. It is undisputed that a protective order in a family matter cannot be issued without a finding of family violence. Tx.Fam.Code §81.001.

19

CASH has offered no evidence other than his own self-serving statement that Higgins told him she had a protective order to support his contention. He has not offered a statement in support of his contention or other evidence from Higgins or an observer at the time he spoke with Higgins. There is no independent evidence to support his contention.

It is a significant question of fact whether CASH did or did not verify the existence of the alleged Protective Order – as he was required by written Directive of his employer to do -- prior to arresting THOMAS. At the very least, CASH cannot claim he did so prior to arrest because:

a. the timeline, *supra*, clearly shows that the arrest was made before CASH called the DA;

b. CASH offers nothing but his self-serving affidavit to support the allegation that Higgins told him she had a protective order.

c. Moreover, CASH's allegation is refuted by the clear language used by Higgins in her call to the University Police and in the dispatcher's call – both of which expressly stated "Restraining Order;" and

d. CASH's allegation is suspect because the only place the words protective order appear – other that CASH's self- serving affidavit – is in the report that was drafted after the fact by Cash himself. Exhibit 4, CR 179 and Exhibit 1 35/20-24, CR 155. CASH offers no supporting evidence of any kind that supports

any allegation that a protective order was alleged by any person or existed at the time.

e. CASH's allegation is suspect because THOMAS testified that the three officers involved had the order in hand when CASH returned from Higgin's office and that the express statement was made by one officer, "You violated this order, that's why you're being under arrest." Exhibit 2 at 45/22-24, CR 169. The order <u>clearly</u> states that it is a restraining order and <u>clearly</u> is devoid of any prohibition against Thomas meeting with his wife at her place of employment. CR 187.

f. In his deposition, CASH testified that he was in the company of officers David Anders and Derek McClinton when <u>he</u> "told Mr. Thomas he was going to be arrested for violation of a protective order." Exhibit 1 at 29/22-25. This coincides with the testimony of THOMAS that CASH had the order in his hand when he returned from Higgin's office and told THOMAS in the presence of two other officers that he was being arrested for violating "a protective order." Exhibit 2, 45/22-24, CR 169.

g. CASH did not verify the existence of the alleged protective order as required by his employer, *infra*, because CASH testified that he told the DA that THOMAS had violated a protective order and the DA allegedly told him that "she" would verify the alleged fact of the existence of a protective order. "She" did not verify that fact to CASH. Nevertheless, THOMAS was arrested.

h.     The charges were rejected.  Exhibit 8, CR 199.

In point of fact, THOMAS was released <u>after</u> his arrest because the DA discovered that there was no protective order – this is undisputed. Exhibit 8, CR 199.

Therefore, ab initio, CASH did not have probable cause or the authority to make the arrest of THOMAS for the reason  he stated – for violating a protective order.

It is noteworthy to distinguish the urgency of this situation.  Had THOMAS pulled a gun and pointed it at CASH, immediate response would have been warranted.   Had THOMAS exhibited threatening or erratic behavior, then appropriate response would have been warranted and probable cause may have existed according the Tx.Crim.Code §14.  In this case, THOMAS offered no threat, there were no exigent circumstances.  CASH knew, or should have known, that he was required by written department mandate to verify the existence of a protective order before arresting THOMAS.  Yet, he did not.

Correlating the time line and the testimonies and information above, either CASH arrested THOMAS at 12:08 as stated in the Rice Incident Report, Exhibit 4, CR 179, or when he returned from Higgin's office at approximately 12:32-42. Either way, at approximately the time CASH testified that he arrested THOMAS, CASH had a copy of the restraining order in hand and knew, or reasonably should

22

have known, that there was no violation of a protective order, *supra,* therefore, no crime as stated by CASH.

Moreover, even giving CASH the benefit of a doubt vis a vis the order, he arrested THOMAS before verification of the alleged protective order. How do we know that? Because there was never a Protective Order to be verified. Rice University Police Department General Directive: 08 (CR184) is not discretionary and CASH was not authorized to treat it as discretionary. It is a mandate.

CASH did not have a reasonable basis for probable cause or arrest.

The policy stipulated a ministerial act which must be followed in order to protect the civil rights of persons like THOMAS. CASH blatantly and unreasonably violated a strict policy of his employer in a situation that bore no indication of life threatening acts or harm to any individual or of civil disobedience, the only exigent circumstances that could have excused his failure to follow policy and procedure.

In the alternative, a genuine issue of material fact exists whether CASH had any evidence that supports his contention of the existence of a protective order or his version of the facts. Further, a genuine issue of material fact exists which regard to the reasonableness of his failure to follow strict procedure, as he was required to do.

3.  **CASH did not act in good faith and, therefore, cannot meet that element of his affirmative defense of Official Immunity.**

Re-urging the foregoing argument as evidence of lack of good faith, THOMAS argues further that good faith is established when it is proved that a reasonably prudent government official, under the same or similar circumstances, could have believed that his actions were justified. *City of Lancaster v. Chambers*, 883 S.W.2d at 656. A government employee acts in bad faith if he could not have reasonably reached the decision in question. *University of Houston v. Clark*, 22 S.W.3d at 918. Good faith can be established as a matter of law **when the employee's factual recitation is otherwise supported by the evidence** (emphasis added). *Alamo Workforce Development, Inc. v. Vann*, 21 S.W.3d at 435.

Thomas testified that CASH had the order in his hand when he returned from Higgin's office and told THOMAS that he was being arrested for violating the protective order, *supra*. Exhibit 2, 45/22-24, CR 169. The order clearly states that it is a restraining order and clearly is devoid of any prohibition against Thomas meeting with his wife at her place of employment. CR 187.

Regardless, CASH was required to verify the existence of a protective order before making the arrest. He attempts to profess that he made the arrest because the DA said "she" would verify the protective order, but the fact remains that no protective order existed and CASH made an arrest for violation of a nonexistent protective order before the existence or nonexistence of the order was verified.

24

Appellants have offered no evidence that the DA has no authority to override the written mandate of Rice University. There were no exigent circumstances that excuse CASH from acting contrary to policy.

Thinking practically for a moment, had CASH simply detained THOMAS until he heard back from DA Keagle – the reasonable thing to do, especially in light of the written mandate – there would be no lawsuit. CASH would have followed procedure, there would have been no arrest based upon a nonexistent protective order, and these parties would not be taking up the time of this honorable court.

THOMAS avers it is impossible for an intelligent, competent reasonable person in this situation who has allegedly been trained to deal with such issues to read an order signed by a judge that clearly states it is a "Restraining Order" and mistake it for a "Protective Order." It is undisputed that CASH was required to know the difference between a restraining order and a protective order. Exhibit 1 at 16/19-20, CR 155. CASH he admitted in his deposition he did not know the difference. Exhibit 1 at 16/14-22, CR 155.

As argued above, CASH has offered nothing except his self-serving affidavit and a report prepared by himself as his basis for believing that the order at issue was a protective order. His factual recitation is not otherwise supported by any

third party evidence, contrary to *Alamo Workforce Development, Inc. v. Vann*, 21 S.W.3d at 435.

There is no evidence of his claim that Higgins told him she had a protective order, which is contrary to the actual evidence.

The dispatcher advised of a restraining order, not a protective order.

CASH had the actual order in hand and apparently did not read it, *supra.*

Appellants state that CASH called the DA and told the DA that Thomas had violated a protective order. CASH states that the DA said "she"[5] would verify the existence of the alleged protective order. The DA, therefore, acted on a fraudulent and bad faith misrepresentation by CASH, who had no reasonable evidence upon which to base his allegation to the DA of a protective order.

**4.      CASH clearly did not act in good faith when he ignored the true nature of the order upon which he allegedly based the arrest of THOMAS.**

It is undisputed that the Order CASH alleged THOMAS violated was a Mutual Temporary Restraining Order, not a Protective Order. Exhibit 6, CR 187.

It is undisputed that the Restraining Order makes absolutely no mention of family violence. *Id.*

_____

5  It is undisputed that the DA on duty that day was Todd Keagle, a male, *infra*. Cash testified that the DA was a female. While this isn't dispositive of anything, it does reinforce the fact of other discrepancies in CASH's testimony and the false statements he made in his report regarding family violence and a protective order.

It is undisputed that the Restraining Order in no way prevents THOMAS from going to his wife's place of employment of meeting with his wife. *Id.*

It is unrefuted that CASH had a copy of the restraining order and apparently did not read it or did not comprehend what he read. THOMAS testified to this fact. Exhibit 2, 42/12-24 and 45/15-25, 169

It is undisputed that the words "Protective Order" were not asserted or used by Higgins or the Dispatcher, Exhibit 3, CR 176, or any other person except CASH that day.

It is undisputed that THOMAS did not violate the Restraining Order on the date and time relevant herein.

It is undisputed that THOMAS behaved calmly and in a nonthreatening manner at all times.

It is undisputed that Catherine Higgins advised the RUPD dispatcher that a Restraining Order, not a Protective Order, was at issue. Exhibits 3, CR 176.

It is undisputed that the RUPD dispatcher used the words "restraining order" and not "protective order" in her dispatch. Exhibits 3, CR 176.

CASH testified that Catherine Higgins did not tell him that she was a victim of family violence. Exhibit 1, 41/20-22, CR179.

It is undisputed that CASH completed his report of the incident by stating that THOMAS was in "violation of a court order" and by noting "Y" for yes under

27

the heading "Domestic Violence," despite the foregoing facts.  Exhibit 4, CR 179 and Exhibit 1 35/15-24, 41/8-9, 41/20-22, CR 155.

It is undisputed that CASH falsely wrote on his report that the dispatcher "made a general broadcast in reference to a subject with a [sic] active protective order,"  Exhibit 4 at page 3, CR 179  – notwithstanding the undisputed fact that both Higgins and the dispatcher used the words "restraining order."

It is undisputed that CASH stated that he advised Assistant District Attorney Keagle that THOMAS was in violation of a protective Order.  Exhibit 8, CR199.

It is undisputed that the charges were rejected by the DA.  Exhibit 8, CR 199.

Therefore, CASH cannot establish good faith.

It seems impossible to believe that a reasonably prudent official, under the same or similar circumstances, could believe that the actions of CASH were justified or would have acted as CASH did, *see City of Lancaster v. Chambers*, 883 S.W.2d at 656; *University of Houston v. Clark*, 22 S.W.3d at 918, when one considers:

(a)    his blatant and repeated disregard for the title and language of the actual document he was allegedly enforcing, and

(b)    the words of the dispatcher, and

(c)  his failure to follow the mandate to verify the alleged protective order prior to arrest – all he had to do was read the document itself, which he had in his possession.

This fact is compounded by the actual written policy and procedure of RUPD with regard to situations such as this. According to RUPD General Directive: 08B2, CR 184:  "When probable cause exits [sic] to believe a person has committed an action which violates the terms of a valid Protective Order, **prior to arrest**, **verification of existence of Protective Order will be made**."  (Emphasis added.)  The policy is very clear – it requires actual verification, not inquiry, not alleged reasonable belief.  That requirement was a mandated ministerial act, not a discretionary act.

It is undisputed that CASH did not verify the existence of the alleged Protective Order prior to arresting THOMAS.  As stated, all he had to do was read the title of the order at the very top of the first page, printed in capital letters and bold type.  Exhibit 6, CR 187.

So, not only did CASH blatantly and wantonly ignore the rights of THOMAS, he blatantly and wantonly ignored the written mandated prerequisites of his employer, Rice University, before he arrested THOMAS.  There was no probable cause, no reason to believe THOMAS had committed an act that violated a protective order that did not exist.

29

Every basis for CASH's alleged belief there was probable cause and for the arrest of THOMAS was a fiction made up in CASH's mind. Why? Who knows; perhaps for self-aggrandizement. Regardless, there is no supporting evidence for probable cause, no threatening actions by THOMAS, no protective order – only the imagination of CASH. There is no evidence to support his claims.

Good faith can be established as a matter of law when the employee's factual recitation is otherwise supported by the evidence. *Alamo Workforce Development, Inc. v. Vann*, 21 S.W.3d at 435. In this case, a careful review of the timeline, *supra*, clearly indicates that CASH appears to have falsely stated the facts of his conversation with the DA that he alleges occurred prior to the arrest.

Based upon CASH's testimony, it does not appear possible for him to have made a phone call to the DA until long after the arrest was made. The arrest was made at 12:08 PM. Exhibits 4 and 8, CR 179 and 199.

According to the time line, the alleged call to the DA could not have occurred until sometime between 12:27 and 12:32 PM or later. CASH stated that he made the decision to arrest <u>after</u> the phone call to the DA. Exhibit 7 at 15 and 16, CR 194. However, the actual reports (Exhibits 4 and 8, CR 179 and 199) indicate that THOMAS was arrested at 12:08 PM and that he was transported to the West University Police Department at 12:26 PM.

30

THOMAS argues to this Court that CASH never made the alleged phone call until after the arrest, if he made it at all. In support of this allegation, and in addition to the contradictions shown in the time line, please note that the District Attorney to whom the case was presented was Todd Keagle. Exhibit 8, page 1, CR 199. It is undisputed that DA Todd Keagle handled the matter and it is undisputed that Todd Keagle is a male. Exhibit 8, CR 199.

CASH testified under oath that the DA to whom he spoke was a <u>female</u> named Keagle. Exhibit 1, 28/510, 29, 8-16, CR 155. It seems obvious that, after THOMAS was taken to the jail and before CASH's deposition, CASH got the name of the DA who handled the matter from someone, but he didn't get the correct gender.

It is more likely than not that CASH never called the DA prior to the arrest, but made the decision *sua sponte* to arrest at 12:08 as shown on the reports. It seems more probable he made the arrest before he ever talked to Higgins or allegedly to the DA, and that he never attempted to verify the alleged Protective Order as directed by Exhibit 5, <u>RUPD General Directive: 08</u> until after the arrest – which is why the DA refused to accept the charges.

Appellants cite *Gidvani v. Aldrich* 99 S.W.3d 760,764 (Tex.App.-Houston [1st Dist] 2003, no pet.) at page 35 of their brief for the proposition that the measure of "good faith in official immunity cases [is] a standard of objective

reasonableness without regard to the official's subjective state of mind." This is specious logic. Whether an official such as CASH were mentally deranged or just simply incompetent, he must be judged by a standard of reasonableness and not given carte blanche to act against the public interest simply because of his "subjective state of mind."

With all due respect to this Court, Appellee submits that one cannot derive a "standard of objective reasonableness" upon which to base evaluation of the acts of another without taking into consideration the subjective state of mind of the other person(s). If we gave a walk to everyone whose defense is either a lie or "I made a mistake" without regard to his subjective state of mind (i.e., Why did he lie? Was the mistake intentional or foreseeable?), we would not need courts and a system of law.

CASH is asking for a walk in this case simply because he ignored the facts in front of him, contrary to *Alamo*, 21 S.W.3d at 435. The facts and the evidence do not support CASH's version of the events that took place or his contention of good faith.

CASH's factual recitation is not supported by credible evidence. At the very least, a genuine question of material fact exists with regard to the testimony of CASH with regard to his basis for the arrest, notwithstanding the undisputed fact that there was never a Protective Order at issue.

**5.    CASH was not performing a discretionary function.**

Arguably, the decision to arrest THOMAS could have been discretionary, except for at least three problems.

a.    As argued above, there was no probable cause because there was no Protective Order to be violated, and no threatening behavior by THOMAS, so there were no justifiable legal grounds to believe that THOMAS had "committed or [was] committing a crime," and therefore, no probable cause for arrest.

It is undisputed that CASH stated that he advised Assistant District Attorney Keagle that THOMAS was in violation of a protective Order.  Exhibit 8.  It is undisputed that this was a false statement.

It is unrefuted by actual evidence that CASH was never actually advised, or otherwise had knowledge, of the existence of any actual Protective Order before making the arrest.

It is unrefuted that CASH had a copy of the restraining order.  THOMAS testified to this fact.  (Exhibit 2, 42/12-24 and 45/15-25, CR 169.)

b.    Prior to making the arrest, CASH was required by General Directive: 08B to verify the existence of a valid protective order.  The policy is very clear – it requires actual verification, <u>not inquiry, not reasonable belief</u>.  That requirement was a mandate, a ministerial act, not a discretionary act.  It was a ministerial act that was a condition precedent to the discretionary act of arrest.

Therefore, CASH cannot claim that he is entitled to Official Immunity because he did not meet all necessary elements. Because he did not perform the condition precedent for his actions to rise to the level of discretionary, his action was not discretionary. It was precluded by the express written mandate of his employer from becoming discretionary.

His authority to arrest for violation of a protective order could not become operative until after the alleged protective order was verified. And it is undisputed that it was never verified because it never existed.

THOMAS was peaceful. Had CASH verified that there was, in fact, no protective order prior to his arrest of THOMAS, he would have known that he had no probable cause and no basis to arrest, or at least any reasonable person in those circumstances would have known that.

c.      Cash's defense that he acted because the DA told him the DA would verify the protective order is suspect for the following reasons:

(1)      It is undisputed that CASH stated that he advised Assistant District Attorney Keagle that THOMAS was in violation of a "Protective Order." Exhibit 8, CR 199.

(2)      It is undisputed that CASH made the arrest before Keagle verified – actually disproved – the nonexistence of the alleged protective order.

(3)     It is unrefuted that CASH had a copy of the restraining order (Exhibit 6, CR 187 which clearly states that it is a "Restraining Order, and not a "Protective Order." THOMAS testified to this fact.  Exhibit 2, 42/12-24 and 45/15-25, CR 169.

(4)     It is undisputed that CASH testified that he did not know the difference between a Restraining Order and a Protective Order.  Exhibit 1 at 16/14-22, CR 155.

(5)     It is undisputed that CASH testified that did not know what Rice General Directive: 08 (Exhibit 5, CR 184) is.  Exhibit 1, 12-2-4, CR 155.

(6)     CASH expressly testified that he did not recall what he was taught by RICE about making an arrest with regard to family violence.  Exhibit 1, 15/15-18, CR 155.

(7)     It is unrefuted that the DA did not have the authority in this situation to override the written mandate of the RICE UNIVERSITY POLICE DEPARTMENT.

Therefore, CASH gave the DA false and fraudulent information, which is clearly not good faith or reasonable. In point of fact, CASH testified that the DA stated that the DA would verify the information.  CASH did not testify that the DA authorized or approved the act of arrest at that time.  CASH did not wait for the result of that verification inquiry by the DA, as he was required to do.

**6. CASH was not performing in the course and scope of his authority.**

It is undisputed that CASH's authority and duties did not include the authority to disregard the written mandated policies of his employer, did not include the authority to disregard the express written order of a district judge, did not include the authority to make a false statement to the DA's representative. Therefore, CASH was outside the course and scope of his authority when he arrested THOMAS.

**7. RICE UNIVERSITY and the RICE UNIVERSITY POLICE DEPARTMENT have no immunity.**

Although official immunity applies only to individuals, an agency or institution may be shielded from respondeat superior liability for its employee's negligence if the employee has official immunity. *DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex. 1995). In this case, THOMAS believes that he has shown that CASH cannot prove the elements of his affirmative defense and, therefore, is not eligible for Official Immunity. If CASH cannot claim official immunity, neither can RICE UNIVERSITY and RICE UNIVERSITY POLICE DEPARTMENT.

**8. RICE UNIVERSITY and the RICE UNIVERSITY POLICE DEPARTMENT did not properly train CASH.**

CASH was not properly trained by RICE and RUPD. In his deposition, CASH was questioned about his training. See Exhibit 1, 6/22 -8/3, CR 155.

a. CASH expressly testified that he did not receive instruction in probable cause, Exhibit 1, 7/23-25, CR 155.

b. CASH expressly testified that he did not receive instruction in the making of an arrest on Rice property, Exhibit 1, 8/1-3, CR 155.

c. CASH testified that did not know what Rice General Directive: 08 (Exhibit 5) is. CR 184. See Exhibit 1, 12-2-4, CR 155. The Court will recall that this is the directive that mandates verification of an actual protective order before an arrest for alleged violation of such an order can be made.

d. CASH also expressly testified that he did not recall what he was taught by RICE about making an arrest with regard to family violence. Exhibit 1, 15/15-18, CR 155.

Based upon the testimony of CASH and his demeanor during deposition, he was poorly trained and lacked the knowledge and intelligence to properly perform his duties.

RICE and RUPD either knew or should reasonably have known this. Yet RICE and RUPD gave CASH a badge and a job that allowed him arrest privileges over citizens and residents of Houston, which he abused gravely in this instance.

RICE and RUPD had an obligation to properly train CASH and to ensure that he was properly trained before allowing him to act in an official capacity. RICE and RUPD breached this duty which breach is the proximate cause of

37

economic and emotional damage to THOMAS for which he is entitled to recover his actual and consequential damages.

## **CONCLUSION AND PRAYER**

We were all taught in law school that it is sometimes necessary to go from the ridiculous to the sublime to make a point. Hypothetically, using the facts and parties herein:

a.    if, instead of arrest, execution were the proper action to take upon a person for violating a valid protective order, and

b.    if RUPD 8 read "When probable cause exists to believe a person has committed an action which violates the terms of a valid Protective Order, prior to execution, verification of existence of Protective Order will be made;" and

c.    if CASH had taken the same course of action, then

d.    THOMAS would be dead and would have been dead long before Keagle determined there was no protective order.

Given the time line and the sequence of events in this case, reasonableness and good faith on the part of CASH don't seem nearly as believable considering the hypothetical as Appellants want us to believe.

38

Notwithstanding the hypothetical, extant governing case law holds that Appellants do not, at this time, have standing to bring an interlocutory appeal. For this reason, Appellee requests this Court deny Appellants' appeal.

Moreover, because official immunity is an affirmative defense, in order to obtain summary judgment on official immunity, the governmental employee must conclusively prove each element of the defense. *Gray County v. Shouse*, 201 S.W.3d 784 (Tex.App.-Amarillo 2006, no pet.). A "matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence." *McCartney, M.D. v. May, M.D.*, 50 S.W.3d 599, 604 (Tex.App.-Amarillo 2001, no pet.).

When all evidence is considered in the light most favorable to the nonmovant, Appellee believes he has successfully demonstrated sufficient material questions of fact that show that ordinary minds could differ on the conclusions to be drawn from the circumstances and facts giving rise to this cause of action.

Appellee believes that Appellants cannot conclusively prove that CASH acted in good faith, acted reasonably, was performing a discretionary function, and/or was performing within the scope of his authority.

More expressly, Appellee does not believe that the evidence presented by Appellants proves "conclusively" that Appellants are entitled to summary judgment on the affirmative defense of official immunity.

Therefore, Appellee requests this Court deny Appellants' appeal and Appellants' appeal of summary judgment and remand this matter to the lower court for disposition.

Respectfully submitted,

/s/ *Larry M. Champion*
Larry M. Champion
State Bar No. 04086478
4420 FM 1960 West, Suite 101
Houston, Texas 77068
Ph 287-583-0280
Fx 281-583-8200
lchampion@sbcglobal.net
Attorney for Appellee

## Certificate of Service

I certify that a true and correct copy of the foregoing was served on February 2, 2015, by electronic transmission  e-service according to the Texas Rules of Appellate Procedure 9.5 addressed to:   Rusty Hardin/Andy Drumheller, *Rusty Hardin & Assoc. PC,* 1401 McKinney, Suite 2250, Houston, Texas 77010, ph 713 652 9000, fx 713 652 9800.

/s/ *Larry M. Champion*
Larry M. Champion

## Certificate of Compliance

I certify that Appellee's Brief is 8,500 words in accordance with Texas Rule of Appellate Procedure 9.4(i)(2)(B).

/s/ *Larry M. Champion*
Larry M. Champion